[L.A. No. 30685. May 5, 1977.]

CHRIS P. ARP, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CHRIS ARP
CONSTRUCTION COMPANY, INC., et al., Respondents.

## Counsel

Howard J. Scott and Scott & Myles for Petitioner.

Alfred Lombardo as Amicus Curiae on behalf of Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen, Arthur Hershenson, Richard A. Krimen, Charles L. Swezey, Philip M. Miyamoto and Thomas J. McBirnie for Respondents.

Twohy & Brown and Kevin R. Twohy as Amici Curiae on behalf of Respondents.

## Opinion

**RICHARDSON, J.**—We review a decision of the Workers' Compensation Appeals Board (board) which denied to Chris P. Arp, a widower (hereinafter petitioner), the benefit of the conclusive presumption of total dependency afforded to widows by Labor Code section 3501, subdivision (a). (All statutory references are to that code unless otherwise indicated.)

Section 3501 provides in pertinent part: "The following shall be conclusively presumed to be wholly dependent for support upon a deceased employee: [¶] (a) A wife upon a husband with whom she was living at the time of his injury, or for whose support such husband was legally liable at the time of his injury." Section 3502 (with exceptions not relevant here) requires that all other persons, including widowers such as petitioner, establish their entitlement to death benefits by proving the fact and extent of their dependency upon the deceased employee.

Petitioner contends that section 3501, subdivision (a), violates the equal protection clauses of both the federal and the state Constitutions, and that the section results in gender-based discrimination in the "terms, conditions, or privileges of employment" of a type prohibited by title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a)). We will elect not to resolve the latter question, however, since we will determine, for reasons hereinafter developed, that section 3501, subdivision (a), denies

the equal protection of the laws to both widowers and employed women. We will also conclude that it would be inappropriate and unwise to attempt to fashion a makeshift judicial cure by adopting an interpretation which extends the benefit of the provision to widowers as well as widows, thereby anticipating a legislative response to our constitutional conclusion.

Astrid Arp, petitioner's deceased wife, was an employee of Chris Arp Construction Company, Inc. She was fatally injured in an industrial accident and petitioner applied for and received temporary disability payments accrued by Astrid before her death, and expenses for Astrid's medical care. He also sought for himself a death benefit under section 4702, which, at that time, provided as follows: ". . . the death benefit in cases of total dependency, when added to all accrued disability indemnity, shall be the sum of forty thousand dollars ($40,000) except in the case of a surviving widow and one or more dependent minor children, in which case the death benefit shall be forty-five thousand dollars ($45,000) . . . . In cases of partial dependency the death benefit shall be a sum equal to four times the amount annually devoted to the support of the dependents by the employee, not to exceed the sum of forty thousand dollars ($40,000)." (The death benefit has since been increased to $50,000 and $55,000, respectively. Stats. 1976, ch. 1017, § 6.)

If section 4702 is read in conjunction with sections 3501 and 3502, it is clear that a surviving widow, being conclusively presumed totally dependent upon her deceased husband (§ 3501, subd. (a)), is automatically entitled to the maximum death benefit, even if she was entirely self-supporting at the time her husband suffered fatal injury. Surviving husbands, however, like adult children, relatives, and unrelated dependents, bear the burden of proving the extent of their actual financial dependency in order to receive any death benefit at all upon death of the wife. Petitioner challenges this disparity in treatment based on the sex of the surviving spouse.

Astrid Arp earned $6,000 per year as an employee of the construction company wholly owned by her husband. Petitioner asserted a claim for maximum death benefits founded upon the conclusive presumption of section 3501, subdivision (a). The workers' compensation judge ruled, however, that the presumption in favor of widows does not apply to widowers, and deferred the issue of actual dependency for later hearing. Petitioner filed a timely petition for reconsideration with the board, challenging the constitutionality of section 3501's gender-based classifica-

tion. Reconsideration was denied and petitioner has sought review of the board's decision in this court.

### 1. *Equal Protection of the Laws*

We commence our review of petitioner's equal protection argument by examining federal precedent, and note that since 1971 the United States Supreme Court has rendered decisions in at least 10 major sex discrimination cases argued on equal protection grounds. Six have invalidated statutes containing, or practices founded upon, gender-based classifications. (*Califano* v. *Goldfarb* (1977) 430 U.S. 199 [51 L.Ed.2d 270, 97 S.Ct. 1021]; *Craig* v. *Boren* (1976) 429 U.S. 190 [50 L.Ed.2d 397, 97 S.Ct. 451]; *Stanton* v. *Stanton* (1975) 421 U.S. 7 [43 L.Ed.2d 688, 95 S.Ct. 1373]; *Weinberger* v. *Wiesenfeld* (1975) 420 U.S. 636 [43 L.Ed.2d 514, 95 S.Ct. 1225]; *Frontiero* v. *Richardson* (1973) 411 U.S. 677 [36 L.Ed.2d 583, 93 S.Ct. 1764]; *Reed* v. *Reed* (1971) 404 U.S. 71 [30 L.Ed.2d 225, 92 S.Ct. 251].) Four decisions upheld such classifications. (*Califano* v. *Webster* (1977) 430 U.S. 313 [51 L.Ed.2d 360, 97 S.Ct. 1192]; *Schlesinger* v. *Ballard* (1975) 419 U.S. 498 [42 L.Ed.2d 610, 95 S.Ct. 572]; *Kahn* v. *Shevin* (1974) 416 U.S. 351 [40 L.Ed.2d 189, 94 S.Ct. 1734]; *Geduldig* v. *Aiello* (1974) 417 U.S. 484 [41 L.Ed.2d 256, 94 S.Ct. 2485].) The various factors distinguishing the cases are not entirely clear, nor, indeed, even the standards by which the classification is to be judged. While we have held that the strict scrutiny/compelling state interest test must govern sex discrimination challenges under article I, section 7, of the California Constitution (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 17, 22 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]), the standard applicable under the Fourteenth Amendment, as it has evolved in the federal courts, appears as a curious hybrid, variously characterized as "strict rationality" (*Berkelman* v. *San Francisco Unified School Dist.* (9th Cir. 1974) 501 F.2d 1264, 1269), or "rational scrutiny" (Gunther, *The Supreme Court, 1971 Term,* 86 Harv.L.Rev. 1, 21.) The most recent pronouncement on the applicable federal standard is contained in *Craig* v. *Boren, supra,* 429 U.S. at p. 197 [50 L.Ed.2d at pp. 407-408, 97 S.Ct. at p. 457], in which the high court announced that statutory sex classifications are acceptable only when they further "important governmental objectives" and are "substantially related to achievement of those objectives." Moreover, neither administrative convenience nor "outdated misconceptions" and "loose-fitting characterizations" will support gender-based classifications. (*Ibid;* see *Frontiero* v. *Richardson, supra,* 411 U.S. at p. 690 [36 L.Ed.2d at p. 594]; *Stanton* v. *Stanton, supra,* 421

U.S. at pp. 14-15 [43 L.Ed.2d at pp. 694-695]; *Schlesinger* v. *Ballard, supra,* 419 U.S. at p. 508 [42 L.Ed.2d at p. 618].)

Petitioner argues that the present case is governed by the United States Supreme Court holdings in *Califano* v. *Goldfarb, supra,* and in *Frontiero* v. *Richardson, supra,* the former involving a social security provision nearly identical to the statute at issue herein.

The Supreme Court in *Goldfarb,* struck down a social security statute which deprived widowers who had received less than half their support from their deceased wives of a stipend available to *all* widows of covered employees, regardless of dependency status. The court rejected an argument that the gender-based classification was ameliorative, intended to provide an income supplement to a group traditionally victimized by discriminatory employment practices. The court's examination of legislative history indicated that the purpose of the various survivors' benefits provisions was simply to assure economic security for the family as a unit. Although conceding that a legislative allocation of " 'noncontractual benefits under a social welfare program' " is entitled to great deference (*id.,* at p. 210 [51 L.Ed.2d at p. 278]), the plurality held that a gender-based distinction which "results in the efforts of female workers required to pay social security taxes producing less protection for their spouses than is produced by the effort of men—is forbidden by the Constitution, at least when supported by no more substantial justification than 'archaic and overbroad' generalizations, . . . or . . . 'assumptions as to dependency' . . . ." (*Id.,* at p. 206-207 [51 L.Ed.2d at p. 276] citations omitted.)

Similarly, in *Frontiero,* the court invalidated a federal statute which had provided an automatic dependents' allowance to married male members of the uniformed services, but required married females to demonstrate the *actual* financial dependence of their spouses in order to qualify for the same benefits. Acknowledging both the administrative convenience fostered by the statute, and the existence of empirical data supporting the proposition that women are more likely than men to be financially dependent upon an employed spouse, the high court in *Frontiero* nevertheless concluded that the law arbitrarily and unfairly penalized servicewomen.

Respondent board, however, contends that, unlike the situations in *Goldfarb* and *Frontiero,* the policy underlying section 3501, subdivision (a), is both ameliorative and rehabilitative. The board maintains that to

compensate for the continuing consequences of past economic discrimination against women as a group (e.g., restricted job opportunities, lower pay scales, harsh credit practices, socially enforced economic dependence), the Legislature has elected to provide, on an expedited basis, a form of insurance payment for women widowed by industrial accidents. Widows, as a class, are likely to be particularly disadvantaged by the legacy of economic discrimination, since they ordinarily have such continuing obligations as mortgage payments, a debt-level geared to the income of the deceased husband, and children to support and educate. A rehabilitative and compensatory purpose, the board asserts, is a constitutionally permissible basis for a sex-based classification.

Assuming, arguendo, the accuracy of its analysis of the legislative intent behind the conclusive presumption at issue, the board's thesis has some precedential support. In *Kahn* v. *Shevin, supra,* 416 U.S. 351, the case upon which the board principally relies, the high court concluded that a Florida statute granting an automatic property tax exemption to widows but not widowers was not a denial of equal protection. The *Kahn* majority distinguished the statute in *Frontiero* on the ground that it served *solely* to promote administrative efficiency; the Florida statute, in contrast, was designed to "further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden." (*Kahn, supra,* at p. 355 [40 L.Ed.2d 193].) The court noted that, traditionally, " '[w]here taxation is concerned and no federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' " A tax statute which is " 'founded upon a reasonable distinction, or difference in state policy' " is constitutionally acceptable. (*Ibid.*)

A similar result was reached in *Schlesinger* v. *Ballard, supra,* 419 U.S. 498, wherein the court upheld a federal statute providing for the mandatory discharge of male naval officers twice passed over for promotion, while permitting most female officers to serve at least 13 years after issuance of their commission before mandatory discharge. Reasoning that the statute represented a good faith attempt to compensate for the fact that navy women, then barred from sea duty, had fewer opportunities for promotion than male officers of the same rank, the court concluded that the sex classification implemented reasonable and legitimate social policies. (See also *Califano* v. *Webster, supra,* 430 U.S. 313.)

Essentially, the Supreme Court found in both *Kahn* and *Ballard* that males and females were not similarly situated with respect to matters governed by the challenged statutes, and that practices designed to compensate for real disabilities imposed upon one sex were constitutionally permissible. The principal issue to be decided in the present case, therefore, is whether the *Kahn-Ballard* reasoning can fairly and properly be applied to the statute at issue herein, or whether, on the contrary, the section 3501 dependency presumption represents merely an "automatic reflex" that is "far different from . . . a legislative decision to favor females in order to compensate for past wrongs . . . ." (*Califano* v. *Goldfarb, supra,* 430 U.S. at p. 222 [51 L.Ed.2d at p. 286], conc. opn. Stevens, J.)

We observe that the statute challenged in *Kahn* was a tax provision, and it has long been the rule that tax classifications carry a presumption of constitutionality which can be overcome only by the most explicit demonstration that the classification fosters hostile and oppressive discrimination against particular persons or groups. (*Kahn* v. *Shevin, supra,* 416 U.S. at p. 355 [40 L.Ed.2d at p. 193]; *Lehnhausen* v. *Lake Shore Auto Parts Co.* (1973) 410 U.S. 356 [35 L.Ed.2d 351, 93 S.Ct. 1001].) Some courts, it must be acknowledged, have applied the *Kahn* reasoning in nontax contexts, and have found the general disparity between the economic capabilities of men and women significant enough to justify a varied catalog of statutes containing gender-based classifications. (*Kohr* v. *Weinberger* (E.D.Pa. 1974) 378 F.Supp. 1299, vacated and remanded on other grounds, 422 U.S. 1050 [45 L.Ed.2d 704, 95 S.Ct. 2671] [social security provision permitting women to use fewer low-income years than men in computing monthly benefit is valid remedy for past economic discrimination]; *People* v. *Elliot* (1974) 186 Colo. 65 [525 P.2d 457] [imposition on fathers, but not on mothers, of criminal sanctions for failure to support children]; *Murphy* v. *Murphy* (1974) 232 Ga. 352 [206 S.E.2d 458], cert. den., 421 U.S. 929 [44 L.Ed.2d 87, 95 S.Ct. 1656] [award of alimony and attorneys' fees in divorce proceedings to women only]; *Commonwealth* v. *MacKenzie* (Mass. 1975) [334 N.E.2d 613] [criminal bastardy statute may properly focus on fathers of illegitimate children]; cf., *Weinberger* v. *Wiesenfeld, supra,* 420 U.S. at p. 648 [43 L.Ed.2d at p. 524].)

Arguably, the conclusive presumption under section 3501, like the statutes cited above, could be upheld on the theory that after centuries of economic discrimination against females, men and women simply are not similarly situated with respect to economic factors. (*Kahn* v. *Shevin,*

*supra,* 416 U.S. at p. 355 [40 L.Ed.2d at p. 193]; see Comment, *Credit for Women in California* (1975) 22 UCLA L.Rev. 873; Note, *The Emerging Bifurcated Standard for Classifications Based on Sex* (1975) Duke L.J. 163, 183.) Under such circumstances, a provision designed to mitigate the continuing consequences of past economic abuse might properly be characterized not only as an appropriate legislative goal, but a state interest of sufficient weight to meet even the more stringent "compelling interest" standard. (See *Swann* v. *Board of Education* (1971) 402 U.S. 1 [29 L.Ed.2d 689, 91 S.Ct. 2200]; *Kahn, supra,* at pp. 359-360 [40 L.Ed.2d at pp. 195-196], dis. opn. Brennan, J.; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937 [92 Cal.Rptr. 309, 479 P.2d 669].) This is especially true where, as here, the act of conferring a benefit upon widows does not, per se, deprive widowers of any substantial benefits to which they are otherwise entitled. (See *Bakke* v. *Regents of the University of California* (1976) 18 Cal.3d 34, 46 [132 Cal.Rptr. 680, 553 P.2d 1152], cert. granted, 429 U.S. 1090 [51 L.Ed.2d 535, 97 S.Ct. 1098].)

■ We find the ameliorative classification argument unpersuasive, however, for two principal reasons. First, only speculation supports the board's contention that the purpose of section 3501, subdivision (a), is to provide present redress for past economic discrimination. We do not feel compelled to accept without inquiry "the mere recitation of a benign, compensatory purpose," particularly when that purpose is "not at all self-evident" and in fact seems historically improbable. (*Weinberger* v. *Wiesenfeld, supra,* 420 U.S. at p. 648 [43 L.Ed.2d at p. 525]; *Craig* v. *Boren, supra,* 429 U.S. 190 at pp. 199-200, fn. 7 [50 L.Ed.2d at p. 408, 97 S.Ct. at p. 458].)

The widow's conclusive presumption of total dependency has survived essentially unchanged since the enactment of the first detailed set of workers' compensation statutes in 1913 and their comprehensive revision in 1917. (See Stats. 1913, ch. 176, § 19, subd. (a)(1), p. 289; Stats. 1917, ch. 586, § 14, p. 844.) The presumption is the relic of an era in which the majority of persons—certainly the majority of those in positions of power—accepted as axiomatic that "the God of nature made woman frail, lovely and dependant . . . ." (Browne, Debates in the Convention of California (1850) p. 259.) "Frail, lovely" she may remain, but "dependant" she need not be. In 1913, the Legislature had yet to confer upon married women a present and existing interest in the very earnings they contributed to the support of their families and the acquisition of marital property. (Cf. *Spreckels* v. *Spreckels* (1897) 116 Cal. 339 [48 P. 228]; *Stewart* v. *Stewart* (1926) 199 Cal. 318 [249 P. 197].) For many years

thereafter—indeed, until well into the second half of this century—we have seen the enactment, reenactment and conscious retention of statutes which, however benevolently motivated, had the effect of severely restricting the employment opportunities available to female workers. (See, e.g., former Bus. & Prof. Code, § 25656, Stats. 1935, ch. 330, § 56.4, as amended by Stats. 1937, ch. 681, § 1, p. 1934 [prohibiting employment of women as bartenders], repealed Stats. 1971, ch. 152, § 1, p. 203; former Lab. Code, §§ 1250-1252, Stats. 1921, ch. 903, § 1, p. 1699 [limiting weights women could be required to lift], repealed Stats. 1976, ch. 1177, § 1; §§ 1350 [restricting female workers' hours], 1350.5 [preferential overtime pay for women], declared violative of title VII of the Civil Rights Act of 1964, *Homemakers, Inc., of L. A.* v. *Division of Indus. Welf.* (9th Cir. 1974) 509 F.2d 20, cert. den., 423 U.S. 1063 [46 L.Ed.2d 655, 96 S.Ct. 803].)

Society is belated in its recognition of the baseless prejudice inherent in longstanding notions of woman's proper social and economic roles; consequently, we think it most unlikely that section 3501, subdivision (a), was the product of anything other than the "archaic and overbroad" role stereotypes that clearly underlie later, similar legislation. This conclusion is supported by the fact that the 1913 workers' compensation scheme contained a *second* conclusive presumption of total dependency, operative in favor of a *husband* wholly or partially dependent upon his deceased wife's earnings at the time of her death. (Stats. 1913, ch. 176, § 19, subd. (a)(2), p. 289.) The requirement that surviving husbands, but not surviving wives, show at least *partial* dependency in order to trigger the conclusive presumption of *total* dependency, indicates "an intention to aid the dependent spouses of deceased wage earners, coupled with a presumption that wives are usually dependent," thus presenting "precisely the situation faced in *Frontiero* and *Wiesenfeld*." (*Califano* v. *Goldfarb, supra,* 430 U.S. at p. 217 [51 L.Ed.2d at p. 283].) Moreover, even this limited presumption in favor of husbands did not survive the extensive revisions of 1917, which suggests a legislative determination that the truly dependent widower was an anomaly rare enough to be dealt with on a case-by-case basis without severe loss of administrative efficiency.

Although the underlying assumption that married men support their families and married women do not may once have borne a substantial and self-perpetuating relationship to hard economic realities, it was not entirely accurate at the time (at the turn of the century, 5 million women workers comprised 18 percent of the total labor force); clearly, it is

outmoded in a society where more often than not a family's standard of living depends upon the financial contributions of both marital partners. (Kanowitz, Women and the Law (1969) p. 100; U.S. Bureau of the Census, Statistical Abstract of the U.S. (96th ed. 1975) p. 346.)

Second, even if we were to accept the board's benign construction of legislative intent, and the compelling nature of the state's interest in banishing the effects of past discrimination, the *method* the Legislature has chosen must be "substantially related" to the ameliorative goal. ■ Indeed, to pass muster under the California equal protection clause, a statutory classification founded upon the suspect category of sex must represent the narrowest and least restrictive means by which the objective can be achieved. (*Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d at pp. 20-21; *Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 466 [125 Cal.Rptr. 129, 541 P.2d 881]; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487].) ■ In this connection, it is noteworthy that the conclusive presumption in favor of widows discriminates not only against the widower but against the employed *female* as well.

The operation of the section 3501 widow's presumption is curiously convoluted, reflecting the unexamined role stereotypes, the social and psychological "reflex," upon which it is founded. Except to the extent that the conclusive presumption may eliminate red tape and so accelerate payments to the truly needy widow, the sole result of this denial of parity between male and female employees is to benefit the financially independent widow—in most cases, an employed and fully self-supporting woman—by providing her with money she would not receive if she had to demonstrate dependence. This "benefit," however, is premised upon the theory that she is, by nature and custom, dependent; and as a logical corollary, her contribution to the family economy is presumed to be of insufficient importance to justify compensating her surviving spouse unless he can produce evidence to the contrary. On balance, the employed woman is shortchanged. While her male colleagues are assured that in the event of a fatal industrial accident their widows—even fully self-supporting widows—will receive a financial cushion, the employed woman can provide her husband with no such security. He will receive benefits only to the extent that he can prove dependency, and if he is himself employed he may be eligible for no supplemental death benefit whatever.

It is true that Mrs. Arp, unlike the deceased wives in *Goldfarb* and *Wiesenfeld,* did not contribute a portion of her earnings to the fund from

which her husband is now denied benefits. Section 3751 of the Labor Code prohibits employee contributions. However, the right to compensation insurance coverage arises from "the relationship of employer and employee itself" (*Noe* v. *Travelers Ins. Co.* (1959) 172 Cal.App.2d 731, 733 [342 P.2d 976]; *Shipbuilding etc. Co.* v. *Indus. Acc. Com.* (1922) 57 Cal.App. 352, 357-358 [207 P. 416]), and is, at least in this sense, part of the wage-and-benefits package an employee receives. Thus, under section 3501, subdivision (a), the position held by a working woman with an employed spouse may well generate a smaller sum total of economic benefits than the same job held by a working male with an employed spouse. Since it is estimated that in more than half the families in the United States both husband and wife are wage earners (U.S. Bureau of the Census, Statistical Abstract of the U.S., *supra,* p. 346), the negative potential of section 3501, subdivision (a), is obvious and substantial.

In summary, when a statute is sexually discriminatory on its face, and is unsupported by any clear indication of ameliorative purpose, when it potentially disadvantages large numbers of the very sex it purports to aid, and does so by perpetuating the paternalistic notion that a woman's financial contribution is unlikely to be of substantial importance to the family unit, that statute cannot be said either to be necessary to the realization of a compelling state goal (*Westbrook* v. *Mihaly, supra,* 2 Cal.3d at pp. 784-785; *Kahn* v. *Shevin, supra,* 416 U.S. at pp. 357-360 [40 L.Ed.2d at pp. 194-196], dis. opn. *Brennan, J.*), or to " 'rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' " (*Id.,* at p. 355 [40 L.Ed.2d at p. 193].) We conclude, accordingly, that section 3501, subdivision (a), is unconstitutional under the equal protection clauses of the United States and California Constitutions.

II. *Extension Versus Invalidation*

We turn to the question of remedy. Petitioner urges upon us the course adopted in *Goldfarb, Wiesenfeld* and *Frontiero*: extension of statutory benefits to males and females alike, without regard to actual dependency. (See also *Kalina* v. *Railroad Retirement Board* (6th Cir. 1976) 541 F.2d 1204.)

Although courts do not lack power to remedy a constitutional defect by literally rewriting statutory language, it is a comparatively drastic alternative, to be invoked sparingly, and only when the result achieved by such a course is more consistent with legislative intent than

the result that would attend outright invalidation. (See *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406], in which we concluded that to construe "deemed denied" as meaning "deemed granted" was proper when the only alternative, striking the provision, would frustrate legislative intent entirely; Note, *Extension versus Invalidation of Underinclusive Statutes: A Remedial Alternative* (1975) 12 Colum.J.L. & Soc. Prob. 115; Note, *Developments in the Law—Equal Protection* (1969) 82 Harv.L.Rev. 1065, 1136-1137; *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964* (1971) 84 Harv.L.Rev. 1109, 1188-1190.)

The broad assumptions concerning women's economic role in the family unit upon which the section 3501 presumption apparently is based seem both to deny equal protection and clearly to conflict with the state policy of abolishing archaic stereotypes in the area of employment. (See *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d at pp. 20-21; Lab. Code, § 1411.) ▪ We do not believe, however, that the provision and its conclusive presumption of dependency can legitimately be extended to encompass widowers, even if that course is the only way to preserve them.

In *Weinberger,* the Supreme Court in effect held that substitution of the word "parent" for the word "mother" was consistent with Congressional intent to subsidize parental care for minor children. Similarly, the legislative history of the restrictive widower's annuity provision examined in *Goldfarb* revealed that Congress had sought to aid the family unit, and had in fact intended to " '*equalize the protection given to the dependents of women and of men*' " by authorizing widowers' pensions, "*because '[u]nder the present program insured women lack some of the rights which insured men can acquire.*' " (*Califano* v. *Goldfarb, supra,* 430 U.S. at p. 216 [51 L.Ed.2d at p. 282], citing Advisory Council on Soc. Sec., Recommendations for Soc. Sec. Legislation, Sen. Doc. No. 208, 80th Cong., 2d Sess., at p. 38 (1949).) Faced with a reasonably clear expression of congressional intent, the court could properly choose to implement this double purpose by truly equalizing: that is, extending to widowers the full benefits available to widows.

Our own case is somewhat different. Although statutory history is virtually nonexistent, we have one clear, if antique, indication that the Legislature *did not want* widowers to receive compensation in excess of their actual, demonstrable financial loss: it *repealed* the original limited presumption affording surviving husbands total dependency benefits on

a showing of only partial dependency. (Stats. 1917, ch. 586, § 14, p. 844, repealing and replacing former § 19, Stats. 1913, ch. 176, p. 289.) ■ The general rule which dictates liberal construction of workers' compensation statutes in favor of granting rather than withholding benefits (§ 3202) cannot override a clear expression of intent that a particular provision shall be read restrictively. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449].)

■ Moreover, we believe that invalidation is a wiser course than extension in this particular instance. Section 3501, enacted at a time when women generally were not the financial mainstays of intact families, probably was intended merely to promote administrative convenience, granting automatic death benefits to all widows rather than incurring the expense and inconvenience of conducting case-by-case hearings which would result in full payment to the vast majority of widows in any event.

A determination that the public interest would best be served by extending that presumption to widowers is properly a legislative function. Such action would undoubtedly have some impact on workers' compensation insurance rates, since the present rate structure presumably has been carefully calculated without reference to the additional risk of maximum payout in all cases of female fatalities. Conceivably, the number of women killed in job-related accidents is so small as to make of negligible significance the economic impact of extension. Without data to that effect, however, we believe the wiser course is to strike the offending provision and permit the Legislature in its wisdom to evaluate the competing policies, obtain and examine statistical information, and act upon the basis of an informed and practical judgment.

A similar conclusion was reached in *Homemakers, Inc., of L. A.* v. *Division of Indus. Welf., supra,* 509 F.2d 20. Having found the California Labor Code provision which sets preferential overtime rules for women employees in conflict with title VII, the appellate court approved the trial court's express rejection of the extension approach on the ground that it was without "power to interpret the challenged statutes in a way which would significantly expand the statutorily designated class of beneficiaries. Although such an interpretation might provide the consistency between the challenged statutes and the federal law necessary for

upholding the former, it would usurp the legislative power vested exclusively in the state." (*Id.*, at p. 22.) Under circumstances such as those presented to us, where legislative preference is uncertain and the consequences unclear, judicial caution is appropriate. (See also *Craig* v. *Boren, supra,* 429 U.S. at p. 210, fn. 24 [50 L.Ed.2d at p. 414, 97 S.Ct. at p. 463], in which the Supreme Court invalidated a discriminatory liquor statute, leaving it to the state legislature to choose whether to extend beer-purchasing privileges to 18-year-old males, or to withdraw those privileges from 18-year-old females; *Stanton* v. *Stanton, supra,* 421 U.S. at pp. 17-18 [43 L.Ed.2d at pp. 696-697].)

Nor do we envision that the invalidation of section 3501, subdivision (a), will result in any substantial disruption of the overall workers' compensation scheme, or any unfair hardship to an employee's survivors. With that particular provision inoperative, all applicants, widows and widowers alike, will be required to prove their dependency, and will be compensated in accordance with the facts and circumstances shown. (§ 3502.) An unemployed spouse presumably can easily establish total financial dependency on the deceased employee, and even an employed spouse may well be able to show partial dependency, since partial dependency is determined in light of the applicant's standard of living. (*Larsen* v. *Industrial Acc. Com.* (1950) 34 Cal.2d 772, 774 [215 P.2d 850]; *London Guar. etc. Co.* v. *Ind. Acc. Com.* (1943) 57 Cal.App.2d 616, 619 [135 P.2d 7].) Moreover, under section 3501, subdivision (b), a conclusive presumption of dependency in favor of minor children remains in effect. As a result, even if the surviving spouse is financially self-sufficient and unable to show actual dependency, the full death benefit will be available to any minor children left dependent upon the surviving parent. (§ 4702.) For example, a fully employed widow with a minor child, who would have received a $55,000 benefit by operation of the widow's conclusive presumption of total dependency, may under our decision receive nothing herself; but the full $55,000 death benefit which formerly would have been exhausted by the widow, will be awarded to the children. (*State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1950) 95 Cal.App.2d 671 [213 P.2d 518]; see also *Douglas Aircraft Co.* v. *Ind. Acc. Com.* (1944) 24 Cal.2d 340 [193 P.2d 468]; *Smith* v. *Workmen's Comp. App. Bd.* (1966) 245 Cal.App.2d 292 [53 Cal.Rptr. 816].) Thus the family unit loses nothing. The only persons who will suffer substantial loss of benefits by reason of the invalidation of the widow's presumption are childless, financially self-sufficient wives. If the Legislature elects to extend the conclusive presumption to such persons it may easily do so, affording equal treatment to widowers.

We hold that the conclusive presumption of total dependency under section 3501, subdivision (a), is invalid and that, pending action by the Legislature, all applicants must be left to establish proof of dependency under section 3502.

Finally, we are persuaded that to avoid "severe and unforeseen hardships," our decision should have prospective application only. (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 801 [87 Cal.Rptr. 839, 471 P.2d 487].) Heretofore, employers' insurance premiums have been calculated on the assumption that all widows would receive maximum benefits, and numerous settlements and awards that are not yet final were made in reliance upon section 3501. Despite the continuing character of the board's jurisdiction (§§ 5803, 5804), we are of the opinion that previous awards or settlements based upon the widow's presumption should, in fairness, remain undisturbed. Accordingly, the rule announced herein shall be effective only with respect to injuries occurring on or after the date this decision becomes final.

The order of the Workers' Compensation Appeals Board is affirmed. Each side shall bear its own costs.

Tobriner, Acting C. J., Mosk, J., Clark, J., Sullivan, J.,* Wright, J.,† and Files, J.,‡ concurred.

The petitions of respondent Workers' Compensation Appeals Board and petitioner Arp for a rehearing were denied June 2, 1977, and the opinion was modified to read as printed above.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

‡Assigned by the Chairman of the Judicial Council.