[Civ. No. 4804. Fifth Dist. Mar. 20, 1980.]

IVY L. FENSKE, Plaintiff and Respondent, v.
BOARD OF ADMINISTRATION OF THE PUBLIC
EMPLOYEES' RETIREMENT SYSTEM, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and Richard M. Radosh, Deputy Attorney General, for Defendant and Appellant.

Haynes & Olpin and Margaret R. Stone for Plaintiff and Respondent.

OPINION

HOPPER, Acting P. J.—We are primarily concerned in this case with (1) whether California Constitution, article III, section 3.5 (hereinafter

referred to as section 3.5) divests the superior court of jurisdiction to review questions concerning the constitutionality of statutes governing administrative agencies, and (2) the constitutionality of Government Code section 20020.

We conclude (1) that section 3.5 does not divest the superior court of jurisdiction to review such questions, and (2) that Government Code section 20020 is unconstitutional insofar as it purports to apply only to males. We further conclude that rather than invalidate Government Code section 20020, it should be construed to apply also to females.

The facts are these: Respondent, Ivy L. Fenske (hereinafter Fenske), commenced employment October 19, 1971, as a secretary-dispatcher with the Grover City Police Department. She advanced to the position of dispatcher-stenographer. By reason of such employment Fenske was a member of the Public Employees' Retirement System (hereinafter P.E.R.S.) and was classified by the Board of Administration (hereinafter Board) of P.E.R.S. as a "local miscellaneous member."[1] Fenske had been injured while attending a basic firearms class at the sheriff's reserve academy and subsequently required surgery. As a result she stopped working for the Grover City Police Department on March 22, 1975. On October 21, 1975, she applied for disability retirement seeking reclassification as a safety member[2] in the retirement system on two alternative bases: (1) that she actually worked as a police officer for the city, and (2) that she was employed to perform communication duties and entitled to safety membership under Government Code section

---

[1] A "local miscellaneous member" under Government Code section 20018 includes all employees of a contracting agency except local safety members. A "local safety member" is defined in Government Code section 20019 as including all local policemen and firemen employed by a contracting agency. Government Code section 20020 defines "local policeman." That section provided between 1945 and 1972 (later amendments are discussed *infra*): "20020. 'Local policeman' means any officer or employee of a police department of a contracting agency, except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise and whose functions do not clearly fall within the scope of active law enforcement service but not excepting *male* employees assigned to identification or communication duties, or persons employed and qualifying as patrolmen or equal or higher rank irrespective of the duties to which they are assigned." (Italics added.)

Although the statute uses the term "identification or communication duties," for purposes of simplicity, we refer only to communication duties as including both types of duties.

[2] Board states that, if disabled, a safety member would receive retirement at approximately one-half of final salary while a disabled "miscellaneous member" received approximately only one-third of the final salary.

20020 and that that section discriminated against her on grounds of sex.

The Board denied Fenske's application for reclassification. Fenske sought mandate in the superior court. The superior court held that there was substantial evidence to support the Board's finding that Fenske did not qualify as a local policeman under the general provisions of Government Code section 20020 (her first ground for reclassification and an issue not before us on this appeal). However, the superior court concluded that the Board failed to determine whether Fenske was performing communication duties on or before August 4, 1972. The superior court issued a writ of mandate commanding the Board to redetermine that issue and if Fenske was performing such duties that Fenske would have the right to elect between safety and miscellaneous membership in P.E.R.S. The superior court further concluded that section 3.5 did not divest the superior court of jurisdiction to declare Government Code section 20020 unconstitutional; that section 20020 was unconstitutional as applied to Fenske. Board appeals from the judgment issuing the writ.

## STATUTE OF LIMITATIONS

■ Board contends that Fenske's cause of action for safety member benefits arose when Fenske reasonably could use safety membership protection, i.e., in 1971 (or no later than Mar. 1, 1972, when Fenske's job classification was changed) which was more than three years before Fenske's demand for reclassification made in November 1975 and thus the statute of limitations had run. The contention is without merit. "A cause of action accrues when a suit may be maintained thereon, and the statute of limitations begins to run on the date of the accrual." (*Pena* v. *City of Los Angeles* (1970) 8 Cal.App.3d 257, 262 [87 Cal.Rptr. 326].)

When a claim is made by a living person on the grounds of permanent disability, the statute will not begin to run until the commission or board makes the determination for or against the petitioner. (*Tyra* v. *Board of Police etc. Commrs.* (1948) 32 Cal.2d 666, 671 [197 P.2d 710]; see also *Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 750 [129 Cal.Rptr. 289, 548 P.2d 689].) Despite an earlier right to sue for declaratory relief, the statute of limitations does not begin to run on an installment until it becomes due. (*Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 462-464 [326 P.2d 484].) The statute of limitations is not a bar in the instant case.

CALIFORNIA CONSTITUTION, ARTICLE III, SECTION 3.5

The voters in California in the 1978 June election passed Proposition 5 which added section 3.5 to article III. That section reads: "Sec. 3.5. An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:

"(a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional;

"(b) To declare a statute unconstitutional;

"(c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

The Board contends that section 3.5 divests the superior court of jurisdiction to rule on the constitutionality of statutes governing administrative agencies. Consequently, the Board asserts that this court should adopt a procedure that a petitioner who has completed the administrative process and is still aggrieved should be authorized to bypass the superior court and petition directly in the Court of Appeal when an issue of constitutionality still remains. We disagree. While jurisdiction could have been given to a court other than the superior court, that was not the purpose of section 3.5. The power of the administrative agency, not the power of the superior court, is the subject matter of section 3.5. Section 3.5 did not deprive the superior court of its power to declare a statute unconstitutional. The power of the judiciary to declare laws unconstitutional is firmly entrenched as a basic principle of our government (see *Marbury* v. *Madison* (1803) 5 U.S. (1 Cranch) 137 [2 L.Ed. 60]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 42, pp. 3280-3281). In the instant case the superior court, not the administrative agency, declared the statute unconstitutional. When a superior court issues a writ directed to an administrative agency to not enforce a statute because it is unconstitutional as it relates to an individual petitioner, or class of petitioners, the administrative agency must obey that mandate. Section 3.5 has not made any real change in administrative mandamus. If the superior court order relates to only a single petitioner, as here, the agency under

the compulsion of section 3.5 and the doctrine of stare decisis is not permitted to apply the order to other persons.[3] Such a result flows from the rule that the doctrine of stare decisis applies only to decisions of appellate courts and trial courts make no binding precedents (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 659, p. 4574).

## GOVERNMENT CODE SECTION 20020

■ The superior court declared that Government Code section 20020 was unconstitutional as applied to Fenske if she was employed as a *communications* worker prior to and on August 4, 1972. The court further held that the section as it read between 1945 and 1972 and as amended in 1972 was unconstitutional insofar as it invidiously discriminated against Fenske solely because of her sex, and that the 1973, 1974 and 1976 enactments failed to cure the constitutional infirmity. We agree with the trial court.

As the statute existed in 1945 *male* communications workers were included under the definition of "local policeman." The 1972 amendment in attempting to remedy the constitutional violation of a discriminatory classification based on gender allowed any *male* employee engaged in communications duties to make an election as to whether he wished to continue as a safety member of P.E.R.S. within 90 days of the effective date of the amendment. The 1973 and 1974 amendments extended the election right to "all persons" if the contracting agency elected to amend its contract with P.E.R.S. to allow the above elections. However, males had had the absolute right (under the 1972 statute) to make the election, while females (under the later amendments) faced the additional limitation of requiring the local agency to first elect to allow them to make the election (Grover City had not made such an election). The 1976 amendment which added Government Code section 20020.1 merely extended the time limit in which the local agency could elect to allow persons to make the election.

Classifications based upon sex are suspect and require strict scrutiny. (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 20 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; see also *Hardy* v. *Stumpf* (1978) 21 Cal. 3d 1, 7 [145 Cal.Rptr. 176, 576 P.2d 1342], and *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18 [112 Cal.Rptr. 786, 520

---

[3]Of course, once an appellate court has ruled upon the constitutionality of a statute, the administrative agency is bound by that decision.

P.2d 10].) Consequently, the Board bears the burden of establishing not only that the state has a compelling interest which justifies the law but also that the classification is necessary to further its purpose (*Sail'er Inn, Inc.*, at pp. 16-17). The Board has not met its burden to show a compelling state interest. In fact, it is difficult to conceive of any justification for giving male employees a preferred status when they perform the identical duties as their female counterparts. The Board really cites no interest whatsoever being protected. The Board points out that the 1972 amendment properly allowed males the right of election to avoid a retroactive change in membership of the males then employed in communication duties. That was a laudable purpose but does not explain why the females were not entitled to be treated in the same manner.

The constitutional defect was simply not cured by the later amendments. Neither administrative conveniences nor outdated misconceptions nor loose-fitting characterizations will support gender-based classifications.

We now turn to the question of remedy. The Board argues that the statute, if unconstitutional, should be invalidated or judgment should be deferred so that the Legislature can address the extension issue.

The rule we should follow is set out in the leading case of *Arp* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 395, 407 [138 Cal. Rptr. 293, 563 P.2d 849], as follows: "Although courts do not lack power to remedy a constitutional defect by literally rewriting statutory language, it is a comparatively drastic alternative, to be invoked sparingly, and only when the result achieved by such a course is more consistent with legislative intent than the result that would attend outright invalidation."

We conclude and we hold that extension is the appropriate remedy here for the following reasons:

(1) If invalidation took place here there might be an impermissible divestment of the vested rights of males who made the required election after the 1972 amendment. While the males would thus be protected in their vested rights (see *Betts* v. *Board of Administration* (1978) 21 Cal.

3d 859, 863-864 [148 Cal.Rptr. 158, 582 P.2d 614]), it strikes us as grossly inequitable that females similarly situated did not even have the opportunity to acquire those vested rights solely because of their gender. Furthermore, problems resulting from improper discrimination are not solved by reducing all to the lowest common denominator.

(2) The intent of the 1972 amendment appears to have been an attempt to achieve parity of benefits. The Legislature at that time was certainly aware of *Sail'er Inn* and knew under the facts in *Sail'er Inn* that gender classification was suspect. Under the circumstances the Legislature obviously did not intend to discriminate.

(3) Under the facts in *Arp* the remedy of invalidation did not preclude males or females from obtaining family benefits under the remaining provisions of the statutes involved in that case. On the other hand invalidation here could deprive both males and females of the benefits. Such a result would not be consistent with the legislative intent. In our opinion it is more consistent with the legislative intent (of extending benefits to employees engaged in communications and identification duties) to extend the option to elect local safety membership in P.E.R.S. to female as well as male communications employees employed at the time set forth in the statute. This is the very type of situation in which *Arp* would extend the benefits rather than invalidate the statute.[4]

The judgment is affirmed.

Zenovich, J., and Condley, J.,* concurred.

---

[4]We are not persuaded by the alternative proposal of the Board that we invalidate both sections 20020 and 20020.1 thereby giving the Legislature the opportunity to enact an appropriate statute. Such an alternative conceivably would accomplish nothing and result in no remedy whatsoever.

*Assigned by the Chairperson of the Judicial Council.