LARIO, J.T.C.
Wrightstown Borough appeals from a judgment of the Burlington County Board of Taxation granting defendant Louis E. Medved a 100% exemption from local real estate taxes on his dwelling house and lot, 219 Platt Avenue, known as Block 601, Lot 21A, for the tax year 1981.
*584 Defendant, as the husband of a deceased 100% disabled veteran, was granted a total exemption by the county board by reason of N.J.S.A. 54:4-3.30. Under subsection (a) thereof the dwelling house and lot of any citizen and resident of New Jersey honorably discharged or released from active wartime service, in any branch of the Armed Forces of the United States, who has been declared by the United States Veterans Administration to have suffered certain enumerated injuries or is certified to be 100% permanently disabled, is exempt from taxation.
Subsection (b) thereof provides, in pertinent part, that
... [t]he widow of any [disabled veteran who qualifies under this act] shall be entitled, on proper claim made therefor, to the same exemption as her husband so had, during her widowhood and while a resident of this State, for the time that she is the legal owner thereof and actually occupies the said dwelling house or any other dwelling house thereafter acquired. [N.J.S.A. 54:4-3.30(b); emphasis supplied]
Defendant contends that this statute should be interpreted to include all spouses of qualified deceased veterans, without regard to gender.
The sole issues involved are:
1. The authority of this court to rule on the constitutional issue;
2. The constitutionality of N.J.S.A. 54:4-3.30(b) under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution,[1] and
3. If N.J.S.A. 54:4-3.30(b) is deemed unconstitutional, is this section invalid or, in the alternative, is the remedy to extend the benefits of the statute to widowers.
Defendant retired from the United States Army in 1960 and Gertrude, his wife, retired from the United States Air Force honorably discharged in October 1967. They were married in December 1967 and thereafter lived in Wrightstown, New Jer *585 sey. In 1976 Gertrude Medved had a complete radical mastectomy as a result of breast cancer. On August 11, 1979 Gertrude applied for an exemption from real estate taxes on the property in question as a permanently and totally disabled veteran, pursuant to N.J.S.A. 54:4 -3.30(a), supra. This application was denied for lack of proof of a service-connected disability.
Gertrude died on November 22, 1979. After her death the Board of Veterans Appeals determined on June 4, 1981 that Gertrude M. Medved’s disability was wartime service connected and it advised by letter dated August 25, 1981 that “a 100% permanent and total evaluation was assigned effective September 27, 1977.”
By judgment dated October 13, 1981 the county board of taxation, as a result of a regular valuation tax appeal, reduced defendant’s assessment from:
Land: $ 7,300
Improvements: $ 33.100
Total: $ 40,400
to:
Land: $ 7,300
Improvements: $ 25,600
Total: $ 32,900
On October 12, 1981 the assessor of Wrightstown Borough disallowed Louis Medved’s claim for a tax exemption under N.J.S.A. 54:4 -3.30(b), supra, on the ground that this statute applied only to widows and not to widowers. Apparently sometime after June 4, 1981 Louis Medved filed a claim with the assessor for a 100% tax exemption under the provisions of N.J.S.A. 54:4--3.30(b), supra, as the widower of Gertrude Medved, but this fact does not appear in the record. Subsequently, Louis Medved appealed the assessor’s disallowance of his claim to the county board, which issued the following judgment: “Totally disabled veteran exemption is granted 11-12-81 posthumously to Gertrude M. Medved, veteran under statute N.J.S.A. 54:4-3.30 extended to the widower, Louis E. Medved.”
*586 The original version of N.J.S.A. 54:4-3.30 (which did not include subsection (b)) was enacted in 1948, thereby implementing Art. VIII, § I, par. 3, of New Jersey’s 1947 Constitution which authorizes such deduction as may be provided by law from taxes on real property owned by any person having a wartime, service-connected disability. This paragraph of the Constitution also permits, as may be provided by law, deductions for the widow of any citizen and resident of New Jersey who met his death in active duty in time of war, during her widowhood and while a resident of New Jersey.
Effective 1954, Art. VIII, § I, par. 3, was amended, thereby extending the tax benefits of a disabled veteran to his widow during her widowhood and while a resident of New Jersey. The Legislature implemented this constitutional amendment by the adoption of N.J.S.A. 54:4-3.30(b), supra.
In enacting N.J.S.A. 54:4-3.30(b), supra, the Legislature clearly expressed its intention, in compliance with the clear and express provisions of the constitutional amendment, to extend the tax-exempt benefits granted to specified disabled veterans under N.J.S.A. 54:4-3.30(a) supra, to widows only by specific use therein of the words: “widow,” “her husband,” and “her widowhood.” The language utilized clearly establishes an intent to limit the benefits thereof to widows. By its failure to employ terms such as “spouse” or “widower,” widowers were specifically not included. Where the plain language of a statute is clear and unambiguous, suggesting a certain result, and there is no indication of intent to the contrary, courts must enforce the statute as written. MacMillan v. Director, 180 N.J.Super. 175, 177, 434 A. 2d 620 (App.Div.1981), aff’d 89 N.J. 216, 445 A.2d 397 (1982). Therefore, unless the statute is unconstitutional, the benefits thereof are extended solely to widows.
The authority of this court to pass upon the constitutionality of tax-related issues has previously been decided by this court. See, generally, Airwork Service Div. v. Taxation Div. Director, 2 N.J.Tax 329 (Tax Ct.1981); Weisbrod v. Springfield Tp., 1 N.J.Tax 583 (Tax Ct.1980). This power, however, is *587 not to be exercised lightly; the accepted rule is that “a statute is presumed to be constitutional and that a court should exercise sparingly the power to declare a statute unconstitutional.” Jordan v. Horsemen’s Benevolent and Protective Ass’n, 90 N.J. 422, 448 A.2d 462 (1982). Unless a tax statute is so clearly in contravention of the Constitution that there can be no reasonable doubt about it, its validity must be upheld. Weisbrod, supra at 590.
Since the statute in question merely implements New Jersey’s constitutional amendment of 1954 which clearly and specifically limited the extension of this exemption to widows, the statute obviously is not violative of New Jersey’s Constitution.
We must now consider whether defendant is entitled to relief under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Defendant alleges that the statute is an unconstitutional violation of the Equal Protection Clause in that he has been discriminated against solely by reason of his sex. He further contends that to cure the federal constitutional violation this court should extend the statute’s benefits to the previously disfavored class.
Thus, in order for defendant to receive the full exemption, not only must the gender portion of N.J.S.A. 54:4-3.30(b) be declared violative of the Equal Protection Clause of the United States Constitution, but also the New Jersey statute must be extended.
Both the United States and New Jersey Supreme Courts have extended statutes found to violate equal protection due to under-inclusiveness — that is, because the statutes do not include all persons similarly situated with respect to the purposes of the statute. See, generally, Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); Tomarchio v. Greenwich Tp., 75 N.J. 62, 379 A.2d 848 (1977).
*588 The decision to extend or invalidate depends upon many factors such as the judicial philosophy of the court (some take the “functional” view, which advocates a clear separation of legislative and judicial powers and hold that only the legislature can rewrite a statute; others adopt a “checks and balances” view, which holds that a court, after an examination of legislative intent, may engage in minor judicial revision of a statute in order to effectuate that intent), the importance of the legislation and the feasibility of retaining it in altered form, the number of persons originally covered by the statute versus the number who would be added by extension, the identity of the parties, the nature of the relief and whether the particular statute confers a benefit or imposes a burden. See, generally, “Extension Versus Invalidation of Underinclusive Statutes: A Remedial Alternative,” 12 Colum J.Law Soc.Prob. 115 (1975). See, also, Arp v. Workmen’s Comp. Appeals Bd., 19 Cal.3d 395, 408-409, 563 P.2d 849, 856-857, 138 Cal.Rptr. 293, 300-301 (Sup.Ct.1977).
New Jersey’s 1947 Constitution was adopted shortly after the end of World War II. As originally included therein under Art. VIII, § I, par. 3, supra, a widow of any citizen and resident of New Jersey who met his death in active duty in time of war, was permitted a real property tax deduction. No provision was made for a widower of any servicewoman who so met her death. Nor was there any provision to continue the exemption of a qualified totally disabled veteran who died after his active duty in time of war by extending the exemption to his widow. The dominant New Jersey constitutional and legislative plan of the exemption statute under attack was to extend solely to widows the benefits of the 100% tax exemption previously granted to their deceased husbands. It was definitely not contemplated for widowers.
Although the history of the constitutional amendment of 1954 and the implementing legislation is silent as to the reason for adding what is now N.J.S.A. 54:4-3.30(b) to the statute, it is obvious from the record that this amendment was introduced at *589 the urging of various veterans’ groups. At the hearings before the Assembly Judiciary Committee considering the concurrent resolution for this constitutional amendment,[2] there appeared nine representatives from every veterans’ organization of New Jersey, who unanimously spoke in support of the resolution. Of the nine representatives who spoke, seven were men, and they expressed themselves clearly to be in favor of extending the exemption to widows, upon the veteran’s death “when his family needs it more than during the period while he is alive.”[3] (Emphasis supplied). At no time during these hearings, which were dominated by male legislators and male veterans, was there any mention of extending the benefits in question to widowers of servicewomen who met their death in active time of war, nor to widowers of qualified disabled female veterans who died later. It cannot be logically contended, therefore, that the words “widows,” “his” and “he” should be interpreted to include both genders.
The constitutional amendment of 1954 which authorized passage of N.J.S.A. 54:4- 3.30(b), supra, was clear and unambiguous. It limited the benefits of extending the deceased veteran’s tax exemption to widows only. The statute subsequently adopted is also clear and unambiguous; accordingly, this court cannot by extension rewrite New Jersey’s Constitution and the statute to include therein a class that was not intended by either the electorate or the Legislature. The plain meaning of a statute, which confers a right where none existed before, must be given effect, and the court is not privileged to substitute words which the Legislature has not seen fit to include. Tinsman v. Parsekian, 65 N.J.Super. 217, 220-221, 167 A.2d 407 (App.Div.1961). Rules of statutory construction generally apply to construction *590 of the Constitution. In re Hudson County, 106 N.J.L. 62, 144 A. 169 (E. & A. 1928). In construing the New Jersey Constitution, our Supreme Court is enjoined to effectuate the intent of the people in adopting it. This intent is to be formed in the written expression within the instrument, and there is no room for construction where the expression is plain and unambiguous. Fischer v. Bedminster Tp., 5 N.J. 534, 541-542, 76 A.2d 673 (1950).
Accordingly, if N.J.S.A. 54:4-3.30(b), supra, is federally unconstitutional due to discrimination against widowers, it cannot be saved by extending its benefits to widowers; instead, the statute and this provision of New Jersey’s Constitution must be totally invalidated. Extending the statute to include widowers would not only be contrary to the express intent of the Legislature, but also violative of other sections of the New Jersey Constitution. Art. VIII, § I, par. 1, requires that all real property “shall be assessed according to the same standard of value, except as otherwise permitted herein. ..." Art. VIII, § I, par. 2, states that “exemption from taxation may be granted only by general laws.” Since Art. VIII, § I, par. 3, extends the exemption in question to widows only, and since widowers were not expressly included in New Jersey’s constitutional amendment of 1954, a court may not include them by judicial decree. To do so would be violative of the first two mentioned sections of the New Jersey Constitution.
We must now address defendant’s contention that the provision of N.J.S.A. 54:4-3.30(b), without extension, is totally unconstitutional. The test generally applied by the United States Supreme Court to ascertain whether a gender-based discrimination is justifiable is: (1) whether the statute serves an important governmental objective and (2) is it substantially related to the achievement of that objective. Orr v. Orr, supra 440 U.S. at 279, 99 S.Ct. at 1111, 59 L.Ed.2d at 319; Baker v. Harris, 503 F.Supp. 863, 865 (D.C.Dist.1980).
*591 In Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), the Supreme Court of the United States had occasion to consider a similar statute to the one under review. There a Florida statute granted to all widows, but not to widowers, an annual $500 property tax exemption. In upholding the law against a Fourteenth Amendment equal protection challenge the court found that the purpose of the statute was to remedy past discrimination against women, which makes them noncompetitive in the job market. Citing United States Department of Labor statistics, the court found that “[tjhere can be no dispute that the financial difficulties confronting the lone woman in Florida or in any other State exceed those facing the man.” 416 U.S. at 353, 94 S.Ct. at 1735. Noting that “the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation” (citing Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351, 355 (1973)), the court held that the Florida property tax exemption is “reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden.” 416 U.S. at 355, 94 S.Ct. at 1737, 40 L.Ed.2d at 193. Therefore, the court concluded that “Florida’s differing treatment of widows and widowers ‘rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation.’ [citations omitted],” 416 U.S. at 355, 94 S.Ct. at 1737, 40 L.Ed.2d at 193.
Our Supreme Court had the occasion to express its view of the Kahn decision in Tomarchio v. Greenwich Tp., 75 N.J. 62, 379 A. 2d 848 (1977), wherein it invalidated certain gender-based distinctions of New Jersey’s Workmen’s Compensation Act. In commenting on the United States Supreme Court’s reasoning in Kahn, our Supreme Court stated:
There the Supreme Court upheld a statute granting widows, but not widowers, an annual $500 property tax exemption. The Court found that the statute had the remedial purpose of cushioning the financial impact of spousal loss, which places a highly disproportionate burden upon widows because of past economic discrimination, and for that reason the Court concluded that the classification was related substantially to the object of the legislation. .. .
*592 Unlike the case at bar, Kahn concerned a challenge to a state tax law, an area where the states historically have enjoyed ‘large leeway.’ 416 U.S. at 355, 94 S.Ct. at 1737, 40 L.Ed.2d at 193. More importantly, women qua wage earners were not the concern of the tax legislation. The Court found that the gender-based classification in the tax statute was remedial, designed to rectify past discrimination visited upon women generally, and that its benign purpose was not a subterfuge or mask for heaping indirectly additional economic disadvantages on women, [at 70-71, 379 A2d 848; citations omitted]
Both the United States and New Jersey Supreme Courts have recognized that all laws that discriminate are not necessarily violative of the Equal Protection Clause of the Fourteenth Amendment. Both courts have expressly stated in Kahn, supra, and Tomarchio, supra, that women have in fact been economically discriminated against.
As was indicated in the Department of Labor’s statistics cited in Kahn, supra, prior to World War II a husband was the main income producer of most households. By receiving a wartime, service-connected, 100% disability, a male veteran’s family suffered great economic loss which was not generally true for a female veteran’s family. Recognizing this economic fact, the New Jersey electorate and the Legislature has attempted to ameliorate this condition by extending to the widow of a disabled veteran the same tax exemption which her husband had. This exemption is continued during her period of widowhood, when she needs it more than during the period while her husband is alive.
Since the statute in question serves an important governmental objective (to cushion the financial impact upon widows of disabled veterans) and it is reasonably designed to achieve that objective, it meets the test devised by the United States Supreme Court to justify a gender-based benefit. The statute, therefore, is not violative of the Equal Protection Clause of the United States Constitution.
The judgment of the county board of taxation is reversed and the assessment, as reduced by the county board’s prior judgment of October 13, 1981, is reinstated.

After the trial the Attorney General of New Jersey was notified by defendant that he was raising the unconstitutionality of this section. R. 4:28-4(a). The Attorney General’s office did not enter an appearance nor did it file an answering brief.

Hearing before the Assembly Judiciary Committee on Assembly Concurrent Resolution No. 5 introduced by Assemblyman Donald D. Mackey, held March 2, 1953, Court House, Elizabeth, New Jersey.

Id. T — 4.