Opinion
 

 ELKINGTON, J.
 

 Gary Allen Bradburn died as a proximate result of an industrial injury. Jeremy Shannon (Harrison) Tessler (hereafter for convenience, Jeremy) entered into a “Compromise and Release” with Bradburn’s employer and its insurance carrier under which, as a partial dependent of the deceased worker, she would be paid a lump sum benefit of $10,000. When the parties sought its approval of their agreement, the Workers’ Compensation Appeals Board (Board) ordered that the State of California’s Department of Industrial Relations (State) be joined as a party to the proceedings. (See Lab. Code, § 4706.5, quoted in relevant part, pp. 78-79,
 
 infra.)
 

 The Board, sitting en banc, thereafter found as here relevant, that Jeremy was a partial dependent of the deceased worker, and that the “State of California is [not] entitled to payment of a death benefit pursuant to Labor Code Section 4706.5(a).” It then “affirmed and
 
 *75
 
 adopted” the “Compromise and Release,” .and ordered “that the State of California take nothing by way of [its] claim.”
 

 On the State’s petition we review the Board’s award and order.
 

 The State with reasonable accuracy relates the material facts before the Board as follows:
 

 “On December 3, 1974, the deceased employee herein, Gary Allen Bradburn, was involved in an aircraft collision resulting in his admittedly industrially caused death. At the time of his death, the decedent was living with one Jeremy S. Tessler, the applicant in the proceeding below, in a house in Carmel, California. Tessler had resided with decedent for approximately three to four months at the time of his death. At the time of the decedent’s death Tessler, a resident of Kaleden, British Colombia, was married to one Isrial [sic] Tessler to whom she had been married for five and one-half years. When Tessler moved into the decedent’s home she brought with her approximately $1,000 in travelers checks. At that time the decedent had a savings account in the approximate amount of $10,000 and a checking account containing approximately $300. Tessler and decedent changed the decedent’s savings account and checking account to an account in both their names. During the three to four month period Tessler and decedent were living together mortgage payments and household expenses were paid from both the savings account and the bank account. Tessler placed $250 out of the $1,000 travelers checks she brought with her in the savings account and at the time of the decedent’s death had $200 left of the original $1,000 in travelers checks. The remaining $550 was spent on groceries while the decedent and Tessler lived together, a trip to Yosemite with hotel accommodations, repair of the decedent’s car and a trip to Kaleden in November to pack up Tessler’s belongings.
 

 “Tessler testified that she and the decedent were living together as husband and wife but not calling themselves husband and wife and not holding themselves out to the community as husband and wife. Tessler further testified that it was understood between the decedent and herself that as soon as it was legally possible they would become husband and wife. Tessler also testified that she did all the normal household chores for the decedent and herself such as cooking and baking bread, making beds and washing. In addition, Tessler testified that she paid the household expenses as well as doing grocery shopping and wrote checks
 
 *76
 
 in the joint checking account. Tessler was not employed during the time she lived with the decedent.”
 

 Several contentions are placed before us by the respective parties.
 

 The State contends (1) that Jeremy was not a lawful dependent of the deceased worker, and (2) that under Labor Code section 4706.5 it was entitled to the “total dependency death benefit that would be payable to a surviving spouse with no dependent minor children,” i.e., $40,000.
 

 Jeremy argues, the Board having found her to have been the deceased worker’s only dependent, that she was entitled to the full statutory dependency death benefit award of $40,000.
 

 The employer and its insurance carrier insist (as the Board ruled) that having settled and compromised the claim of the deceased worker’s only dependent, Jeremy, they are absolved of further liability to the State, or Jeremy, or anyone.
 

 We first consider the State’s contention that Jeremy was not a lawful dependent of the deceased worker.
 

 Labor Code section 3503, as relevant, provides:
 
 “No person is a dependent of any deceased employee unless in good faith a member of the
 
 family or
 
 household of the employee, . .
 
 .” (Italics added.)
 

 There was substantial evidence as found by the Board that Jeremy was,
 
 in fact,
 
 a member of the deceased worker’s
 
 household
 
 and his partial dependent. (See
 
 Moore S. Corp.
 
 v.
 
 Industrial Acc. Com.
 
 (1921) 185 Cal. 200, 207 [196 P. 257, 13 A.L.R. 676].) The State principally argues that a person in such a relationship as Jeremy bore to the deceased worker may not, as a matter of law, be deemed to have been a “goodfaith” member of his household, as required by section 3503.
 

 Labor Code section 3503 and its substantially similar predecessor statutes were long construed by the reviewing courts of California, and by the Board, as providing that a woman knowingly unmarried to, but living with, a worker at the time of his industrially caused death, and thus a party to a
 
 “meretricious
 
 relationshipcould not be regarded as a dependent of the worker. (See
 
 MacArthur
 
 v.
 
 Industrial Acc. Com.
 
 (1934) 220 Cal. 142 [29 P.2d 846];
 
 Insurance Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1921)
 
 *77
 
 187 Cal. 469 [202 P. 664];
 
 Moore S. Corp.
 
 v.
 
 Industrial Acc. Com., supra,
 
 185 Cal. 200;
 
 Brennfleck
 
 v.
 
 Workmen’s Comp. App. Bd.
 
 (1970) 3 Cal.App.3d 666 [84 Cal.Rptr. 50];
 
 DeFreece
 
 v.
 
 Industrial Acc. Com.
 
 (1938) 26 Cal.App.2d 584 [80 P.2d 129];
 
 Industrial Indemnity Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1951) 16 Cal.Comp.Cases 115;
 
 Mansfield
 
 v.
 
 Stockton Box Co.
 
 (1943) 8 Cal.Comp.Cases 167;
 
 Kendall
 
 v.
 
 Whiting-Mead Wrecking Co.
 
 (1934) 20 I.A.C. 21.) In such situations the parties, by “living together in open and conscious defiance of law,” were “not in
 
 good faith
 
 because they knew that their relations were unlawful.”
 
 (Moore S. Corp.
 
 v.
 
 Industrial Acc. Com., supra,
 
 p. 207; italics added.)
 

 The application of the rule will be well illustrated by the several cases where a woman married to another, and a child of that marriage, in fact became members of a worker’s household, and his dependents. Because of the woman’s meretricious relationship with the worker she was, as a matter of law, not a “good faith” member of his household and was denied workers’ compensation benefits upon his employment-related death. But, it was held, such lack of “good faith” would not be imputed to • the child with an otherwise similar factual degree of dependency; he or she was the deceased worker’s dependent according to Labor Code section 3503 and its ancestral statutes. (See, e.g.,
 
 Insurance Co.
 
 v.
 
 Industrial Acc. Com., supra,
 
 187 Cal. 469;
 
 Moore S. Corp.
 
 v.
 
 Industrial Acc. Com., supra,
 
 185 Cal. 200.)
 

 The State places its reliance upon the foregoing authority.
 

 However, in 1976 California’s Supreme Court decided
 
 Marvin
 
 v.
 
 Marvin,
 
 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106], Although the factual and legal context of that case differed somewhat from that before us, certain policy considerations there announced must reasonably be deemed applicable here. The court said:
 

 “[W]e believe that the prevalence of nonmarital relationships in modern society and the social acceptance of them, marks this as a time when our courts should by no means apply the doctrine of the unlawfulness of the so-called meretricious relationship to the instant case. As we have explained, the nonenforceability of agreements expressly providing for meretricious conduct rested upon the fact that such conduct, as the word suggests, pertained to and encompassed prostitution. To equate the nonmarital relationship of today to such a subject matter is to do violence to an accepted and wholly different practice.” (P. 683.)
 

 
 *78
 
 “The mores of the society have indeed changed so radically in regard to cohabitation that we cannot impose a standard based on alleged moral considerations that have apparently been so widely abandoned by so many.” (R 684.)
 

 It is notable also, that almost contemporaneously with
 
 Marvin
 
 v. Marvin, the Legislature, effective January 1, 1976, repealed Penal Code section 269a, which had theretofore criminally proscribed living “in a state of cohabitation and adultery . . . .”
 

 We are of the opinion that the holding of
 
 Marvin
 
 v.
 
 Marvin
 
 and the repeal of Penal Code section 269a have, by clear implication, repudiated the policy, and the rule and rationale, upon which the State here relies. Jeremy will accordingly be deemed to have been a member in “good faith” of the deceased worker’s household, and thus his dependent within the meaning of Labor Code section 3503. The Board’s fording that she was a partial dependent was therefore without error.
 

 We next consider Jeremy’s contention that she was entitled to the full statutory death benefit award of $40,000.
 

 The record, as noted, establishes that Jeremy had, as provided by Labor Code sections 3859 and 5000-5004, voluntarily and knowingly entered into a compromise and release of her disputed death benefit claim, for the sum of $10,000. She, with the deceased worker’s employer and its insurance carrier, had thereupon sought and obtained from the Board its approval of their agreement. Labor Code section 5001 provides that upon such approval the compromise and release become “valid.” No merit is seen in Jeremy’s instant contention.
 

 The remaining dispute is over the State’s alternative claim, that it was entitled to payment from the deceased worker’s employer or its insurance carrier, of the difference between the settled claim’s amount ($10,000) and the total dependency death benefit ($40,000) which would ordinarily have been awarded. It concerns the application of Labor Code section 4706.5.
 

 Section 4706.5 was enacted in 1972. As amended in 1973 and 1974 and as relevant, it now provides that: “(a) Whenever any fatal injury is suffered by an employee under such circumstances as to entitle him to compensation benefits, but for his death, and such employee does not
 
 *79
 
 leave surviving him any person entitled to a dependency death benefit, the employer shall pay a sum to the Department of Industrial Relations equal to the total dependency death benefit that would be payable to a surviving spouse with no dependent minor children. . . .”
 

 This statute makes no
 
 express
 
 disposition concerning the
 
 balance
 
 of the “sum . . . equal to the total dependency death benefit that would be payable to a surviving spouse with no dependent minor children,” where as here only a portion of the sum is disbursed to a
 
 partial dependent.
 

 But we nevertheless discern a patent legislative purpose that when a worker dies “under such circumstances as to entitle him to compensation benefits, but for his death,” his employer will
 
 in any event
 
 be obligated
 
 at least
 
 in the amount of such a death benefit as “would be payable to a surviving spouse with no dependent minor children.” In such cases the death benefits will be paid according to law to the workers’ dependents, if any, and to the extent that such death benefits as would be payable to “a surviving spouse with no dependent minor children” are not paid to the workers’ dependents, they will be paid to the State pursuant to section 4706.5.
 

 The employer and its insurance carrier argue that in a case such as this, where only a portion of the “death benefit that would be payable to a surviving spouse with no dependent minor children” has been paid to a
 
 partial dependent,
 
 the statute permits them to retain the undisbursed balance (here $30,000). We are unpersuaded. That construction of section 4706.5 would encourage an employer or its insurance carrier to settle doubtful death benefit claims for small amounts and then, arguing reasonable doubt
 
 *
 
 as to liability, obtain confirmation of the Board, thus to avoid the full liability of the statute. Such a result was manifestly unintended by the Legislature.
 

 “It is the duty of the courts, whenever possible, to interpret statutes so as to make them workable and reasonable”
 
 (City of Santa Clara
 
 v.
 
 Von Raesfeld
 
 (1970) 3 Cal.3d 239, 248 [90 Cal.Rptr. 8, 474 P.2d
 
 *80
 
 976]), and to “avoid absurd applications”
 
 (In re Cregler
 
 (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305]). “‘[T]he objective sought to be achieved by a statute ... is of prime consideration in its interpretation’ ”
 
 (Wotton
 
 v.
 
 Bush
 
 (1953) 41 Cal.2d 460, 467 [261 P.2d 256]); here, as pointed out, the legislative objective was that workers’ job-related death benefits be paid in satisfaction of their dependents’ lawful claims, if any, and that such sums as then remain undisbursed be paid to the State.
 

 Except for the affirmation and adoption of the compromise and release, the award is annulled; the Workers’ Compensation Appeals Board will make and enter such an award as is not inconsistent with the views we have expressed.
 

 Racanelli, P. J., and Newsom, J., concurred.
 

 The petition of respondent State Compensation Insurance Fund for a hearing by the Supreme Court was denied August 8, 1979. Bird, C. J., did not participate therein.
 

 *
 

 California Administrative Code, title 8, section 10870, relating to the Workers’ Compensation Appeals Board’s procedures, provides: “Approval of Compromise and Release. Agreements which provide for the payment of less than the full amount of compensation due or to become due, and which undertake to release the employer from all future liability, will be approved only
 
 where it appears that a reasonable doubt exists as to the rights of the parties
 
 or that approval would be for the best interest of the parties.” (Italics added.)