[Civ. No. 57254. Second Dist., Div. One. Apr. 7, 1980.]

GENERAL INSURANCE COMPANY OF AMERICA et al.,
Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
GLEN A. SALE, Respondents.

COUNSEL

Miller & Folse and Rene Thomas Folse for Petitioners.

Donald J. Gonzalez for Respondents.

OPINION

LILLIE, Acting P. J.—Petitioner General Insurance Company of America (General) is one of several insurance carriers for the employer in the subject workers' compensation proceeding before respondent Workers' Compensation Appeals Board (Board). General here contends: (1) in granting the petitions for reconsideration filed by other insurance carriers in this matter the Board erred in refusing to also grant reconsideration as to General on the ground it did not seek reconsideration and (2) the Board erred in ordering General to administer the workers' compensation award. We hold that as General's liability is so inextricably interwoven with the liability of the carriers whose petitions for reconsideration were granted that the Board erred in not extending the grant of reconsideration to General even though General had not sought reconsideration along with the other carriers. We also annul the Board's order directing General to administer the award as it was based upon the refusal to grant reconsideration in favor of General.

I.  SUMMARY OF PROCEEDING BEFORE APPEALS BOARD

Respondent Glen A. Sale filed three claims with the appeals board for workers' compensation benefits. All the alleged injuries occurred

while Sale was employed as a baker by Martino's Bakery (Bakery) from October 1950 through July 16, 1976. Bakery's workers' compensation insurance carriers were: Sentry Insurance Company (Sentry) from January 1, 1958, through January 1, 1966; Zurich Insurance Company (Zurich) from January 1, 1966, through December 31, 1970; Argonaut Insurance Company (Argonaut) from January 1, 1971, through June 30, 1976; and General from July 1, 1976, to July 16, 1976.[1]

The claims for injuries at Bakery filed by Sale are: (1) a cumulative trauma claim[2] to his back and legs during the entire period of employment at Bakery; (2) a specific injury to his right major upper extremity in May of 1975; and (3) a specific back and leg injury on July 16, 1976.

The workers' compensation judge (WCJ) issued a findings and award on March 6, 1979. The WCJ found that Sale had not sustained a specific injury to his right major upper extremity in May 1975. As to the alleged specific back and leg injury of July 16, 1976, the WCJ found this was not a separate injury but rather a component part of the cumulative trauma back and leg injury during Sale's entire period of employment at Bakery. The WCJ found such cumulative trauma injury had occurred at Bakery and therefore awarded Sale with respect to said injury: (a) temporary disability from July 16, 1976, to January 20, 1977, at $119 per week; (b) permanent disability in the total sum of $22,750 (62 percent permanent disability) payable at $70 per week commencing January 24, 1977; (c) recovery of self-procured medical treatment and medical-legal expense; and (d) further medical care to cure or relieve from the effects of the injury. The WCJ ordered that the above benefits were to be paid by Argonaut "subject to its right of contribution" against the other carriers. Thus, while the award was joint and several against all carriers, Argonaut was ordered to administer the award.

Sentry, Argonaut and Zurich then sought reconsideration by the Board. (Lab. Code, §§ 5900, 5903.) *General did not seek reconsideration.* Zurich's petition was dismissed as it had been untimely filed.

---

[1]Apparently insurance coverage from 1950 through 1957 is unknown.

[2]*Labor Code section 3208.1* provides: "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment...."

Sentry and Argonaut contended that the WCJ had erred in (1) failing to find a specific injury occurred on July 16, 1976 and (2) finding Sale's permanent disability was solely related to a cumulative trauma injury. With regard to the latter point Sentry and Argonaut pointed to "the failure to apportion between the various [separate injuries] and noting a 1970 specific injury for which no application had been filed." (Board opinion and orders dismissing petitions for reconsideration, granting petitions for reconsideration and decision after reconsideration, p. 2.) Thus, contended Sentry and Argonaut, the WCJ improperly "merged" what are separate specific and cumulative injuries into one injury. (Lab. Code, §§ 3208.1, 3208.2, 5303; *Aetna Cas. & Surety Co. v. Workmen's Comp. Appeals Bd. (Coltharp)* (1973) 35 Cal.App.3d 329 [110 Cal.Rptr. 780]; *Ferguson v. City of Oxnard* (WCAB en banc opinion, 1970) 35 Cal.Comp.Cases 452.)

The Board affirmed the WCJ's finding that no specific injury occurred on July 16, 1976. The Board concluded that the WCJ correctly found that the alleged injury on July 16, 1976, was "only the final episode of the cumulative [trauma] injury."

The Board was persuaded, however, that Sentry's and Argonaut's contention about improper merger of injuries might have merit. The Board observed that the record revealed the WCJ "may have made two errors": "1. There may in fact be a 1970 specific injury, and such may have an effect when apportionment is considered.

"2. There may have been two cumulative injuries involved here, which were improperly merged to find [one] cumulative trauma injury ...."

The Board viewed that determination of these points "should not delay payment of compensation to the injured worker" even though these points "may affect the determination" of Sentry's and Argonaut's liability. The Board observed that as "Zurich did not file a timely petition and ... General Insurance Company did not petition at all, they have waived the defects referred to above. (See *Robinson v. IAC (Baker)* [writ denied] (1964) 29 Cal.Comp.Cases 91.)" The Board accordingly held: "In order to preserve the rights relevant to defendants Sentry's and Argonaut's timely filed petitions, reconsideration shall be granted to amend the award to show only General Insurance Company and Zurich Insurance Company jointly and severally liable, with General Insurance Company ordered primarily liable. [¶] Defendant General

may seek contribution from Sentry and Argonaut. However, the merits of the contentions raised by the latter defendants should then be examined."

General then sought reconsideration contending the Board erred in finding General primarily liable and failing to make a final determination on the issue of apportionment between the various injuries. The Board denied reconsideration, per an opinion and order dated July 30, 1979, observing that General "overlooks the fact that the reason we affirmed the Findings and Award as it pertained to [General] was because petitioner and Zurich waived the apportionment issue. Argonaut can not remain primarily liable because it did not waive the irregularity."

## II. CONTENTIONS

General here contends: (1) the Board should have granted reconsideration as to General also even though it did not seek reconsideration with Sentry and Argonaut and (2) the Board should not have ordered General to be primarily liable for the award to Sale.

## III. DISCUSSION

A. ■ The Board Erred in Not Granting Reconsideration as to General Since General's Liability Is Inextricably Interwoven With the Liability of the Carriers Whose Petitions for Reconsideration Were Granted.

The Board reasons that any modification of the WCJ's award of March 6, 1979, by virtue of a later finding of a 1970 specific injury or another cumulative trauma injury will not affect General's (or Zurich's) liability as General (and Zurich) waived the issues argued by Sentry and Argonaut by not timely seeking reconsideration. (Lab. Code, § 5904.)[3]

"A review of an award of workmen's compensation serves substantially the same function as an appeal from a judgment in civil proceed-

---

[3]Labor Code section 5904 provides: "The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration."

ings. We see no reason why the annulment of an award of workmen's compensation on the petition of one of multiple defendants should have any greater effect than the reversal of a judgment on the appeal of one of multiple defendants in civil proceedings. [¶] 'An appeal from a judgment by some of the defendants, although the notice of appeal is general in its terms, is of necessity an appeal from only that portion of the judgment which injuriously affects the appealing defendants....' (*Lake* v. *Superior Court*, 187 Cal. 116, 119-120 [200 P. 1041].) A judgment becomes final as against a nonappealing party unless 'portions of a judgment adverse to a nonappealing party are so interwoven with the whole that appeal from a part affects the other parts; in such situation the appellate court can reverse the entire judgment if it is necessary to do justice.' (*Blache* v. *Blache*, 37 Cal.2d 531, 538 [233 P.2d 547].)" (*Marsh* v. *Workmen's Comp. App. Bd.* (1968) 257 Cal. App.2d 574, 579 [65 Cal.Rptr. 69].)

An analogous civil case is *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]. This matter involved litigation among contesting insurance companies as to their respective contractual liability. One carrier, Continental, appealed a finding of coverage against it but the issuer of a certificate of excess insurance (Pacific Lloyd's) did not. The court reversed in favor of Continental and stated as to Pacific Lloyd's: "The fact that the Pacific Lloyd's group (providers of the excess certificates over the basic Continental policy issued to Phoenix) did not appeal does not preclude reversal as to them, for the phase of the judgment relating to their alleged liability is so inextricably interwoven with the rest of the judgment that a complete reversal is necessary in the interest of justice. (See *Blache* v. *Blache* (1951), 37 Cal.2d 531, 538 [233 P.2d 547].) (*Continental Cas. Co., supra*, 46 Cal.2d at pp. 440-441, fn. 8.)

Similarly, the recent case of *Estate of McDill* (1975) 14 Cal.3d 831 [122 Cal.Rptr. 754, 537 P.2d 874] is of note. There the trial court ordered the cousins of decedent were entitled to one-half the estate and the two nieces one-half. One niece appealed. The Supreme Court concluded the trial court erred in the estate distribution and held the entire estate should have been distributed to the petitioner/appellant and the other niece who did not appeal the adverse trial court's judgment. The court held the nonappealing niece was also entitled to the benefit of the court's decision in favor of petitioner/appellant. (*Id.* at pp. 840-841.)

Of contrast is *Marsh, supra*, 257 Cal.App.2d 574 which involved a death claim by dependents of a worker. The claim alleged a cumulative trauma injury during the period from April 30, 1951, through May 22, 1964. Multiple carriers were involved in the claim. A finding of death benefits was made against all the carriers but no allocation was made of the liability among the four different carriers. All the carriers sought reconsideration by the Board. The Board denied reconsideration even though the dependents conceded there was no evidence presented to establish that the employment from April 30, 1951, through November 30, 1953, contributed to the injury. The carrier for that period, Industrial Indemnity, then sought a writ of review; the Board then conceded error and the court remanded the matter to the Board. On remand the Board issued a new award eliminating Industrial Indemnity from liability. One of the other carriers then sought reconsideration, whereupon the Board vacated the award of death benefits and made a finding that the injured worker had not died as the result of an industrial injury. Upon the dependents' petition for writ of review, the court annulled the Board's finding that no industrial injury had occurred.

The court in *Marsh* found that the reversal in favor of Industrial Indemnity did not permit relitigation of industrial causation by the other carriers: "In the present case there was no reason to annul the award against the carriers who did not petition for review. The question raised on review did not affect the findings and award as to them. The liability of each is based on a separate and distinct period of time and set of circumstances. The liability of one is not conditional on the liability of another. The amount of the award against one does not alter the award against another. A retrial of the claim against Industrial Indemnity or the litigation of the issue of apportionment among the carriers will not affect the findings and award in favor of the claimant against the carriers who did not seek review. (See and cf. *Nichols* v. *Dunphy*, 58 Cal. 605, 607; *Bird* v. *McGuire*, 216 Cal.App.2d 702, 718-720 [31 Cal.Rptr. 386], and cases cited therein; *Blache* v. *Blache*, 37 Cal.2d 531, 538 [233 P.2d 547]; *Osborn* v. *Osborn*, 42 Cal.2d 358 [267 P.2d 333]; *Estate* of *Sanderson*, 183 Cal.App.2d 740, 743 [6 Cal.Rptr. 893]; *Ragusano* v. *Civic Center Hospital Foundation*, 199 Cal.App.2d 586, 599-603 [19 Cal.Rptr. 118].)" (*Marsh, supra*, 257 Cal.App.2d at pp. 579-580.)

In *Marsh* the finding of no injury during the period of insurance coverage of Industrial Indemnity (as opposed to finding that no injury had occurred at all) did not affect nor conflict with the finding of injury

during the other carriers' period of coverage. Thus, in *Marsh* the award against the nonappealing carriers was not "inextricably interwoven" with the question of injury during the appealing carrier's period of coverage.

The situation here is different from *Marsh*. The issues upon which the Board granted reconsideration in favor of Sentry and Argonaut equally affect and are inextricably interwoven with the liability of General and Zurich. Accordingly, when the Board granted reconsideration in favor of Sentry and Argonaut the Board should have included General[4] and Zurich[5] even though neither timely sought reconsideration from the WCJ's decision.[6]

However, that reconsideration should have also been granted as to General and Zurich does not preclude the Board from awarding any benefits to Sale at present. To the extent benefits will be unaffected by the outcome of the issues on reconsideration such benefits can now be awarded by the Board on remand.

We are also mindful that, pursuant to Labor Code section 5803, the Board has continuing jurisdiction to reopen a case for "good cause"

---

[4]Further, it must be noted that when the WCJ issued his decision of March 6, 1979, General was in a most difficult position in deciding whether it should seek reconsideration of the WCJ's decision. The WCJ found that there had been no specific industrial injury on July 16, 1976, which is during General's period of coverage for Bakery. This ruling was favorable to it and General only had 16 days of liability on the cumulative trauma claim. Accordingly, General did not want to risk reconsideration of the WCJ's decision for fear that a specific injury might be found during its period of coverage which would greatly increase its liability. Thus, while General may not have been entirely satisfied with the original award by the WCJ, it did not want to risk substantially more adverse findings to it in the event reconsideration was granted by the Board of the entire case. (*Osborn v. Osborn* (1954) 42 Cal.2d 358, 366-367 [267 P.2d 333].)

[5]While Zurich neither timely sought reconsideration from the WCJ's decision nor joined General in either its petition for reconsideration or its petition for writ of review, Zurich will also share the benefits of our decision as its interests are inextricably interwoven with those of Sentry, Argonaut and General.

[6]The decision of the commission (now the Board) in *Robinson v. IAC (Baker)* (1964) 29 Cal.Comp.Cases 91 is not necessarily to the contrary. The facts there stated are insufficient to determine whether the case falls within *Marsh* or not. While this court denied a writ of review in *Robinson*, such denial does not necessarily indicate the court's agreement with the reasoning of the commission. (*Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd. (Gregory)* (1978) 87 Cal.App.3d 336, 347 [151 Cal. Rptr. 368].) Further, *Robinson* predates *Marsh*. (Cf. *Pullman Kellogg v. Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 456, fn. 4 [161 Cal.Rptr. 783, 605 P.2d 422].) In any event, being a decision of the commission, *Robinson* is not binding on this court in the present matter. (*Thrifty Drug Stores, Inc. v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 937, 941 fn. 3 [157 Cal.Rptr. 459].)

upon a petition filed within five years of the date of injury and that "a subsequent judicial interpretation of the compensation statutes contrary to a prior administrative interpretation is 'good cause' to reopen under section 5803 of the Labor Code." (*Knowles* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 1027, 1030 [89 Cal.Rptr. 356].) However, an appellate decision may not be utilized to reopen for "good cause" as a "change of law" if such decision merely restates the existing decisional law. (See *Royster* v. *Workmen's Comp. Appeals Bd.* (1974) 40 Cal.App.3d 412 [115 Cal.Rptr. 210]; see also, *Ryerson Concrete Co.* v. *Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 685 [110 Cal. Rptr. 319].) In order to preclude erroneous attempts by employers and carriers to reopen claims on the basis the decision herein is a "change of law" for purposes of reopening, we observe that our decision is merely an application of well settled law. Any doubts in the field of workers' compensation on the issue presented herein were settled in 1968 by *Marsh, supra,* 257 Cal.App.2d 574. Accordingly, our decision herein does not constitute "good cause" for reopening as a "change of law."

B. The Appointment of a Carrier to Administer
the Award Needs Further Consideration by
the Board

The Board's practice of appointing one or more of the multiple employers or carriers against whom a joint and several award has issued to administer such award has received judicial approval. (*Royal Globe Ins. Co.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 60 [45 Cal.Rptr. 1, 403 P.2d 129].) Such procedure enables the injured worker to more expeditiously receive benefits instead of having to wait until the employers and carriers resolve disputes over each's respective share of the award. (*Ibid.*) The carrier or employer directed to administer the award is protected in that contribution from the other carriers and/or employers can be enforced before the appeals board.

The selection, by the Board, of a certain employer or carrier to administer the award is a matter of discretion. The court may only disturb such selection by the Board where a clear abuse of discretion has been shown as when the rationale behind the Board selection is clearly erroneous.

Here, the Board selected General to administer the WCJ's award of March 6, 1979, as it believed neither General nor Zurich could gain the benefit of any decision favorable to Sentry and Argonaut in the recon-

sideration process. Apparently, the Board selected General to administer the award as only General had not sought reconsideration of WCJ's decision—Zurich at least attempted to seek reconsideration although it was untimely. We do not imagine that the Board in the ordinary case would exercise its discretion by selecting a carrier to administer an award which has only 16 days of coverage (as General has here) rather than carriers who had years of coverage.

The Board's selection of General to administer the award is based upon the erroneous theory that General was bound under the WCJ's award of March 6, 1979, irrespective of the end result of the reconsideration process upon Argonaut's and Sentry's petitions for reconsideration. In light of our above holding that the Board should have also granted reconsideration with respect to the liability of General and Zurich, we assume that the Board will now wish to reexamine the selection of the carrier to administer the award. Accordingly, we also annul the appointment of General to administer the award.

IV.   DISPOSITION

The Board's opinion and order denying reconsideration dated July 30, 1979, is annulled and the matter is remanded to the Board for such further proceedings as are consistent with the court's opinion herein.

Hanson (Thaxton), J., and Cole, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.