[S.F. No. 24335. May 20, 1982.]

ATLANTIC RICHFIELD COMPANY et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD, CARMAN
ARVIZU et al., Respondents.

COUNSEL

Hanna, Brophy, MacLean, McAleer & Jensen and Daniel P. O'Brien for Petitioners.

G. Gordon Taylor as Amicus Curiae on behalf of Petitioners.

George Deukmejian, Attorney General, and B. Franklin Walker, Deputy Attorney General, for Respondents.

OPINION

RICHARDSON, J.—Atlantic Richfield Company and its workers' compensation insurer, Insurance Company of America (employer or ARCO), appeal from a decision of the Workers' Compensation Appeals Board (Board) awarding Carman Arvizu the sum of $50,000 as a death benefit following the death of her husband, Gilbert Arvizu, in an employment-related accident. Two issues are presented. First, in cases in which the surviving spouse is employed, how should partial dependency be determined and death benefits computed? Second, if the death benefits awarded are less than the statutory maximum which would be allowed to a surviving spouse with no other dependents of the deceased, should the difference between the award and the statutory maximum be paid to the Department of Industrial Relations (the DIR)? (Lab. Code, § 4706.5; all further statutory references will be to this code unless otherwise indicated.)

The facts are undisputed. On May 3, 1978, while employed by ARCO, Gilbert Arvizu was killed in an industrially related accident. The parties stipulated that his wife, Carman, was the only surviving dependent. She filed a timely claim for benefits, and a hearing was held before a workers' compensation judge on the only issues, the extent of Carman's dependency and the amount of attorney's fees. It was agreed that at the time of Gilbert's death, the annual earnings of Gilbert and Carman were $16,800 and $9,840, respectively.

On March 15, 1979, the compensation judge issued his findings and award, holding that Carman was a partial dependent entitled to a death benefit in the sum of $33,600. The judge further found that "As de-

ceased and applicant lived together with no other dependants [*sic*], it can be assumed that one-half (1/2) of his income was used to support applicant." One-half of his earnings being $8,400, pursuant to section 4702, subdivision (d), this sum was then multiplied by four to reach the figure of $33,600.

Carman thereupon filed a petition for reconsideration, contending that she was "solely dependent" upon Gilbert "to maintain the community home in the standard of living to which she was accustomed." She claimed that at the time of Gilbert's death the community was in debt beyond the normal expenditures for home or car, thereby demonstrating Carman's complete reliance on Gilbert's earnings.

Relying on *Oropeza* v. *Newman Seed Company* (1980) 45 Cal. Comp.Cases 1148, the Board, sitting en banc, granted reconsideration, and thereafter issued its "Order and Decision After Reconsideration," concluding that Carman was entitled to the statutory maximum of $50,000 (§ 4702, subd. (d)), reasoning that Gilbert's salary of $16,800 multiplied by four equalled $67,200. The *Oropeza* Board had concluded that when both spouses were employed the proper method of computing death benefits for surviving spouses was to treat the *entire earnings* of the deceased spouse as the measure of actual support for the survivor.

The Board also held, in reliance on *Department of Industrial Relations* v. *Workers' Comp. Appeals Bd.* (*Tessler*) (1979) 94 Cal.App.3d 72 [156 Cal.Rptr. 183], that the DIR should be joined as a party in the event that ARCO later prevailed in its arguments that Carman was entitled to less than maximum benefits. The Board further noted that, in such event, ARCO would be required to pay to the DIR the difference between Carman's award and the statutory maximum.

### Partial Dependency

In *Arp* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 395 [138 Cal.Rptr. 293, 563 P.2d 849], we held that the conclusive presumption of total dependency afforded to widows under section 3501, subdivision (a), was unconstitutional as a denial of equal protection. Rather than extending the presumption to widowers, we concluded that "all applicants, widows and widowers alike, will be required to prove their dependency, and will be compensated in accordance with the facts and circumstances shown. (§ 3502.)" (P. 410.)

The Legislature elected not to reinstate the presumption of total dependency, and in 1979 it amended section 3501, removing subdivision (a). It retained the presumption of total dependency only for minor children or children 18 or older, who, because of incapacitation, were dependent upon the deceased parent. It also retained section 3502, which provides that "questions of entire or partial dependency and questions as to ... the extent of ... dependency shall be determined in accordance with the facts as they exist at the time of the injury of the employee."

Our conclusion in *Arp* that applicants for benefits "will be required to prove their dependency" (19 Cal.3d at p. 410), is consistent with the view which we have long held that partial dependents must establish proof of their dependency. (*Spreckels S. Co.* v. *Industrial Acc. Com.* (1921) 186 Cal. 256, 258 [199 P. 8]; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 9.10, p. 316.) Our belief that this comports with legislative intent is further confirmed by the Legislature's action, consistent with *Arp*, in repealing the conclusive presumption of total dependency formerly contained in section 3501, subdivision (a), without attempting to provide any other applicable conclusive presumptions.

Several different approaches have been suggested for determining the appropriate amount of the award to a partial dependent.

ARCO, before the Board, urged that the community earnings be totalled and the percentage of the aggregate earnings which the decedent contributed be applied against the statutory maximum in determining the appropriate death benefit. Here, the total community earnings were $26,640, of which decedent contributed $16,800, or approximately 63 percent. Using this method, the dependent spouse would be entitled to 63 percent of the maximum of $50,000, or $31,500. The problem with this formula is that it does not carefully accommodate the statutory mandate that the amount of partial dependency be determined by multiplying by four "the amount annually devoted to the support of the partial dependents." (§ 4702, subd. (d).) Rather, it adopts an arbitrary percentage method unrelated to the actual sums used for support.

A second method, suggested by ARCO as an alternative, was adopted by the compensation judge. Under this formula, where the parties live together without other dependents, one-half of the earnings of the deceased spouse is considered the amount contributed to the support of

the survivor. As applied to the present case, one-half of Gilbert's earnings ($8,400) were multiplied by four producing a death benefit of $33,600. This is a variation of a "family pot" approach which has been used by the Board in previous cases involving partial dependents. (*Mendoza* v. *Workers' Comp. Appeals Bd.* (1976) 54 Cal.App.3d 820 [127 Cal.Rptr. 173] [contribution of deceased children divided by number of members of family and then multiplied by number of partial dependents]; *Shirek* v. *The Ronoh Preschool for Disturbed Children* (1966) 31 Cal.Comp.Cases 431 [50 percent of deceased wife's contribution to community used as base figure for determining widower's death benefit]; *Desherow* v. *Hindin etc.* (1966) 31 Cal.Comp.Cases 431 [same]; see also cases cited in 1 Herlick, *supra*, § 9.10, pp. 316-317 for other examples of methods used by the Board.)

The major difficulty with this technique is that it considers neither the standard of living of the surviving spouse nor the amount actually contributed to his or her support. Nor does it respect the mutual obligation of support owed by each spouse (Civ. Code, § 5125) and the power vested in each spouse to manage and control the community property (*id.*, § 5100). As one commentator has noted, "In order to establish partial dependency it need not be shown that the dependent could not live without the employee's contributions. It is sufficient that such contributions were looked to in the maintenance of the dependent's accustomed mode of living and that after the employee's death the dependent could no longer maintain the same living standard." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. rev. 1981) § 1502[3](c), p. 15-8, fns. omitted.) A deceased spouse may have paid certain fixed expenses of the community which constitute far more than the one-half of his or her earnings which are measured by this method. Moreover, such spouse may have paid from earnings sums which did *not* accrue to the benefit of the surviving spouse or the community, e.g., premarital debts, alimony, or support to children of a previous marriage.

Finally, the method used by the Board here was originally adopted in *Oropeza* v. *Newman Seed Company, supra*, 45 Cal.Comp.Cases 1148 In directing an award of $21,554.32, reached by multiplying the decedent's total earnings of $5,388.58 in the year preceding his death by four, the Board discerned a legislative intent "to treat the earnings of the deceased spouse as the measure of actual support to the surviving spouse . . . ." (*Id.*, at p. 1152.) It concluded that "any other method would lead to grossly disparate results depending on whether the surviv-

ing spouse was totally dependent or partially dependent ..." because totally dependent spouses are entitled to the full benefit of $50,000 no matter what the earnings of the deceased spouse have been. (*Ibid.*) The Board reasoned that "The community, not merely the surviving spouse, loses the benefit of the deceased spouse's earnings" (*id.*, at p. 1153), noting further that taking only one-half of the decedent's earnings as the appropriate measure "ignores the surviving spouse's earnings which also contribute to the support of the other through the community." (*Ibid.*) The Board therefore concluded that "the actual earnings of the deceased spouse which are utilized for the benefit of the community represent the support provided for the surviving spouse" (*id.*, at p. 1154), while recognizing that certain exceptional circumstances, e.g., partial dependents other than the spouse or income from separate property, might require further inquiry. (*Ibid.*)

■ Given the relevant legislative framework, we conclude that the approach which is most consistent with our *Arp* analysis and the liberal construction of the payment of benefits mandated by the Legislature (§ 3202) is one which considers the actual amount which the deceased spouse devoted to the community and to the surviving spouse.

The nature and degree of dependency is determined as of the date of the employee's injury which results in death, not as of the date of death. (§ 3502; 2 Hanna, *supra*, § 15.02[2], pp. 15-5–15-6.) Commencing with the entire earnings of the decedent, the computation of allowances for actual support should include those fixed expenses which are an integral and reasonable part of the standard of living enjoyed by the community. By way of illustration, we note that expenses incurred for indebtedness and maintenance of the community residence or transportation expenses for the benefit of the community and the spouse may readily be recognized as "actual support" to the survivor. Food, clothing, or incidental expenses incurred for the decedent's own personal use, however, cannot reasonably be considered as part of "the amount annually devoted to the support of the partial dependent."

We fully recognize that arguably inconsistent results may accrue depending on the fortuitous employment status of the surviving spouse. Moreover, we do not attempt to anticipate every variant of cost and expense incurred by spouses and the community, observing that the adjustment of workers' compensation death benefits is properly and primarily a legislative function.

We therefore conclude that the appropriate method for determining partial dependency when both surviving and deceased spouses were employed is to require that the survivor establish the actual "amount annually devoted to" his or her support from the earnings of the decedent. Expenses related to the standard of living of the community are relevant. Expenses which are personal to the decedent are not.

### Is the DIR Entitled to Payment?

■ The remaining issue before us is whether, in death benefit cases of *partial* dependency, the DIR is nonetheless entitled to receive from the employer the difference between the amount paid to the partial dependent and the $50,000 maximum contemplated by section 4702, subdivision (c).

Section 4706.5, subdivision (a), provides "Whenever any fatal injury is suffered by an employee under such circumstances as to entitle the employee to compensation benefits, but for his or her death, and *such employee does not leave surviving any person entitled to a dependency death benefit*, the employer shall pay a sum to the Department of Industrial Relations equal to the total dependency death benefit that would be payable to a surviving spouse with no dependent minor children." (Italics added.)

The foregoing section was first enacted in 1972, after passage of a ballot proposition which amended the California Constitution to add the following language to article XX, section 21 (now contained in art. XIV, § 4): "The Legislature shall have power to provide for the payment of an award to the state in the case of the death, arising out of and in the course of the employment, *of an employee without dependents*, and such awards may be used for the payment of extra compensation for subsequent injuries beyond the liability of a single employer for awards to his employees." (Italics added.)

In *Department of Industrial Relations* v. *Workers' Comp. Appeals Bd. (Tessler), supra*, 94 Cal.App.3d 72, the Court of Appeal noted that the statute made "no express disposition" of any "balance" that might exist after payment of less than $50,000 to a partial dependent. Nonetheless, it "discern[ed] a patent legislative purpose" to the effect that when a worker dies without dependents who are entitled to the full death benefit, "his employer will *in any event* be obligated *at least* in the amount of such a death benefit as 'would be payable to a surviving

spouse with no dependent minor children,'" lacking whom "[it] will be paid to the State pursuant to section 4706.5." (94 Cal.App.3d at p. 79.)

In support of its conclusion, which is not unreasonable, the *Tessler* court asserted that a contrary result "would encourage an employer or its insurance carrier to settle doubtful death benefit claims for small amounts, and then, arguing reasonable doubt as to liability, obtain confirmation of the Board, thus to avoid the full liability of the statute." (*Id.*, fn. omitted.)

In resolving this issue which we have not heretofore squarely considered, we first examine some legislative history. The measure which amended the state Constitution by adding the relevant language to the workers' compensation article was placed on the ballot following legislative adoption of Senate Constitutional Amendment No. 20 (Stats. 1972 (Reg. Sess.) res. ch. 110, pp. 3392-3393). The legislative counsel's analysis prepared for the ballot handbook stated that the measure would permit the Legislature to require payment "on the industrially-caused death of an employee who leaves no surviving dependents . . . ." The measure's cost analysis indicated that "Approximately 10 percent of [persons dying from job-related incidents] leave no dependents."

Similarly, the unopposed ballot argument in favor of the proposition noted that "Under existing law the death benefits from Workmen's Compensation award, which normally are paid to legal heirs, are paid to no one if legal heirs cannot be found. A YES vote for Proposition 13 would allow the Legislature to enact laws which would require that such benefits be paid to a state fund when no legal heirs can be found."

Previously, in 1930, we had struck down a provision of the Workmen's Compensation, Insurance and Safety Act, which had been added in 1929, mandating that an employer pay to a special fund for subsequent injuries the sum of $300 in cases where a deceased employee "does not leave surviving him any person entitled to a death benefit as a dependent under this act . . . ." (*Commercial Cas. Ins. Co.* v. *Indus. Acc. Com.* (1930) 211 Cal. 210, 211 [295 P. 11].) Our action invalidating the statute was based on our earlier holding in *Yosemite L. Co.* v. *Industrial Acc. Com.* (1922) 187 Cal. 774 [204 P. 226, 20 A.L.R. 994], wherein we ruled that the workmen's compensation act could not give the Industrial Accident Commission (predecessor of the Board) the authority to require that an employer pay specified sums to the state treasury for the purpose of funding an "industrial rehabilitation fund"

in cases in which a deceased employee left no dependents entitled to benefits under the act.

In *Commercial Cas. Ins. Co.* v. *Indus. Acc. Com., supra,* 211 Cal. 210, we characterized our *Yosemite* holding as follows: The power of the Legislature to confer judicial power upon the Industrial Accident Commission to decide the liability of an employer was derived totally from then article XX, section 21 (now art. XIV, § 4), of the Constitution. The constitutional provision gave the Legislature authority "to create a tribunal with judicial power to settle disputes arising between employers and their employees, . . ." or their dependents. The liability which the Legislature sought to impose in the subsequent injury fund situation "was a liability, not to any of his employees or to the dependents of any employees, but was a liability to the state, and the dispute . . . was a dispute between the employer and the state, . . ." which, therefore, was not covered by the enabling provision of the Constitution. (211 Cal. at pp. 214-215.) In *Yosemite,* we therefore concluded based upon the foregoing reasoning that "section 21 of article XX . . . did not authorize the legislature to impose a liability on an employer to pay money to the state for the purposes specified in the act of 1919. It follows by necessity that said section gives no authority to the legislature to confer on the Industrial Accident Commission jurisdiction to determine any dispute that may arise concerning the liability of employers sought to be imposed by said act of 1919." (*Yosemite L. Co.* v. *Industrial Acc. Com., supra,* 187 Cal. at p. 783.)

In 1952, however, we considered the propriety of a legislative enactment which created a subsequent injuries fund to benefit workers who suffered increased permanent disability as the result of an industrial accident which was to be funded from money in the state treasury "not otherwise appropriated." (Stats. 1945, ch. 1161, § 5.) We approved the scheme, holding that the funding provision did not provide for an improper "gift of public money," but rather was an act "encompassed within the Legislature's 'plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation' (art. XX, § 21)." (*Subsequent etc. Fund* v. *Ind. Acc. Com.* (1952) 39 Cal.2d 83, 88 [244 P.2d 889].)

Thus, there is precedent in this area for the proposition that the Legislature may *not* go beyond the precise terms of the constitutional enabling provisions—except, perhaps, that it may use its plenary or police powers to promote the overall purposes of the workers' compen-

sation scheme. (Compare *City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 112-117 [148 Cal.Rptr. 626, 583 P.2d 151] with *Hustedt* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 329, 343-345 [178 Cal.Rptr. 801, 636 P.2d 1139].)

We need not, however, consider further the question whether section 4706.5 exceeds constitutional limits because the statute by its own terms does not specifically contemplate the situation where, as here, only a partial death benefit is paid.

We have said that "It is a settled principle in California law that 'When statutory language is ... clear and unambiguous there is no need for construction, and courts should not indulge in it.' (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 ....)" (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) Thus "We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results. [Citations.]" (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

Applying this interpretive standard, we note that on its face, section 4706.5, subdivision (a), does not provide for payment of any balance to the DIR if partial death benefits are paid. The statute requires the specified payment when, following the death of an employee entitled to compensation benefits "such employee does not leave surviving *any* person entitled to a dependency death benefit ..." Thus, by its very terms, the statute contemplates payment to the DIR when persons leave *no* dependents, not when persons leave dependents who are entitled to less than a total death benefit. The DIR is to receive payment only if no dependents survive. Since deceased left a widow, albeit only a *partial* dependent, the statute does not apply.

Moreover, the statute further specifies that in such cases "the employer shall pay a sum to the Department of Industrial Relations equal to *the total dependency death benefit* that would be payable to a surviving spouse with no dependent minor children." (Italics added.) Such a benefit would be in the amount of $50,000. (§ 4702, subd. (c).) The statute is absolutely silent as to the payment of any "balance" or "difference."

In summary, therefore, section 4706.5, subdivision (a), does not apply to the case before us because a "person entitled to a dependency death benefit" does survive. Also, the amount of the death benefit payable under section 4706.5 is not tailored by the statute to a *partial* surviving dependent. Rather, to so apply the statute would require the employer to pay the partial dependent a partial dependency benefit and, in addition, to pay the DIR the maximum death benefit. This, in our view, would be manifestly unfair to employers, inconsistent with the statute, and assuredly would discourage the settlement of partial dependency claims.

There is a further reason why the Legislature may have refrained from imposing DIR payments when partial dependents survive. Presently, under section 4706.5, subdivision (a), employers are required to make "a reasonable search" for dependents before making payments to the DIR. If an employer was required to pay $50,000 to the DIR whether or not partial dependents existed, employers would lose any incentive to find partial dependents in doubtful cases or, when found, to determine the proper amounts due such dependents under section 4702. Moreover, the DIR's interest in challenging claims of partial dependency and amounts awarded for such dependency would thereby alter the relationship between the DIR and potential claimants from supportive to adversarial.

We neither reach an absurd result nor frustrate the purposes of the workers' compensation scheme by following the plain meaning of the statute. (See *People* v. *Belleci, supra,* 24 Cal.3d at p. 884; *Younger* v. *Superior Court (Mack)* (1978) 21 Cal.3d 102, 113-114 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [46 Cal.Rptr. 308, 405 P.2d 132].) We therefore hold that an employer is required to make payment to the DIR, as mandated by section 4706.5, only when the deceased employee left no dependents, total or partial. To the extent that it is inconsistent with the foregoing, *Tessler* is disapproved.

*Retroactive Application*

■ Finally, we consider the extent to which our opinion shall have retroactive application. Under Labor Code sections 5803 and 5804 "the Board has continuing jurisdiction to reopen a case for 'good cause' upon a petition filed within five years of the date of injury and ... 'à subsequent judicial interpretation of the compensation statutes contrary to a

prior administrative interpretation is "good cause" to reopen under section 5803 of the Labor Code.' (*Knowles* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 1027, 1030 [89 Cal.Rptr. 356].)" (*General Insurance Co. of America* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 278, 285-286 [163 Cal.Rptr. 537]; *Messina* v. *Workers' Comp. Appeals Bd.* (1980) 105 Cal.App.3d 964, 971 [164 Cal.Rptr. 762].) As a result, our opinion herein could create a landslide of reopenings of previously adjudicated cases. We are told that numerous settlements and awards have been made in reliance upon the previous interpretation of section 4706.5 in *Tessler*, and it is logical to assume that the Board's decision in *Oropeza* has similarly been relied upon. We are of the opinion that previous settlements and awards based upon (1) the presumption that section 4706.5 provided for the payment of a balance to the DIR if partial death benefits were paid and (2) alternate methods of determining partial dependence, should, in fairness, remain undisturbed. "To allow the board to now reopen cases under Labor Code sections 5803 and 5804 would ... create unfairness and undue litigation." (*Messina* v. *Worker's Comp. Appeals Bd., supra*, 105 Cal. App.3d at pp. 971-972.

Accordingly, we employ the method utilized by the Court of Appeal in *Messina* to determine the application of its holding that Labor Code section 4702 which specified an increased total dependency benefit "in the case of a surviving widow and one or more dependent minor children" applied to cases in which there was a surviving widower and one or more dependent minor children. We therefore "apply our decision as of the date it becomes final, to cases still pending before the board where the amount of the [partial] death benefit has yet to be decided and to cases where the [computation of such partial benefits or the award of any portion of benefits to the DIR] is pending on reconsideration before the board or pending upon a petition for writ of review before the appellate courts." (105 Cal.App.3d at p. 972.)

*Conclusion*

The order joining the State of California, Department of Industrial Relations as a party is vacated, and the case is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with the views expressed above.

Mosk, J., Kaus, J., Broussard, J., and Hastings, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.

**NEWMAN, J.**—I concur in the result but do not agree with the majority's suggestion that "the Legislature may *not* go beyond the precise terms of the constitutional enabling provisions—except, perhaps, that it may use its plenary or police powers to promote the overall purposes of the workers' compensation scheme." (Cf. my dissent in *Hustedt v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 329, 349-352 [178 Cal.Rptr. 801, 636 P.2d 1139].)

**BIRD, C. J.,** Concurring and Dissenting.—Although I join in the majority's conclusion that the Department of Industrial Relations is not entitled to receive from the employer the difference between the amount due a partial dependent and the maximum statutory payment, I must dissent from the formula used by the majority to calculate the benefit due a partial dependent.

The majority adopt a formula which requires a case-by-case determination of the actual amount the deceased spouse devoted to the support of the community and the surviving spouse. (Maj. opn. at pp. 722-723.) By contrast, the Workers' Compensation Appeals Board (Board) favored a general rule providing that, except in unusual situations, the total earnings of the deceased spouse be used as the measure of the surviving spouse's dependency. (*Oropeza* v. *Newman Seed Company* (1980) 45 Cal.Comp.Cases 1148.)

Ordinarily, this court would defer to the interpretation of a statute adopted by the agency charged with its enforcement. (*Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99, 107 [165 Cal.Rptr. 100, 611 P.2d 441] and cases cited.) I see no reason why we should deviate from that rule in this case. The Board adopted a reasonable interpretation of the statute, and I would adopt its formulation.

Former Labor Code section 4702 provided that the death benefit for partial dependents should be "four times *the amount annually devoted to the support of the dependents* by the employee," up to a maximum of $50,000. (Italics added.) Nothing in this language required the Board to individually determine the percentage of a deceased employee's income used to support the surviving spouse. As the Board noted in *Oropeza*, California's community property laws render it difficult to distinguish between the support of one spouse and the support of the community. (*Oropeza, supra,* 45 Cal.Comp.Cases at pp. 1152-1153.) "The marital community is something more than the sum of the economic interests of individuals who make it up. It is this community

which is shattered by a fatal industrial injury. The community, not merely the surviving spouse, loses the benefit of the deceased spouse's earnings." (*Id.*, at p. 1153.)

Further, the formula adopted by the majority would result in the anomalous situation of a completely dependent spouse receiving the statutory maximum, while a surviving spouse who earned only a small amount would receive only the amount she could prove had been devoted to her support. As stated in *Oropeza*, "absent specific direction from the Legislature, the Board [should] not presume that the Legislature intended the harsh results which would flow from applying this formula to the logical extremes urged by petitioner." (*Id.*, at p. 1152.)

Finally, due deference should be given to an administrative agency's clear preference for a general rule, rather than individual determinations of dependency. The Board has utilized a general rule in the past and favors it now. The case-by-case analysis mandated by the majority will accomplish two things—it will result in harsh and unfair judgments and it will undoubtedly increase the agency's workload. The agency will be required to make difficult and unnecessary decisions about the nature of dependency in every case that comes before it. What expenses are to be considered to be those devoted to the support of dependents? Who is to have the burden of proof? What type of proof will be accepted? These are but a few of the questions that must be addressed in each case.

Rather than require the administrative agency to grapple with these complex issues, I would follow precedent and defer to the Board's reasonable interpretation of the Legislature's intent.

The petition of respondent Department of Industrial Relations for a rehearing was denied June 23, 1982, and the opinion was modified to read as printed above.