TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

OPINION

of

DANIEL E. LUNGREN
Attorney General

CLAYTON P. ROCHE
Deputy Attorney General

:
:
:
:
:
:
:
:
:
:
:
:

No. 92-1101

MAY 19, 1993

_____

THE STATE BOARD OF EQUALIZATION has requested an opinion on the following question:

May the Board of Equalization enter into a contract to administer a transactions and use tax enacted by a county which has not been approved by a majority of the electorate?

CONCLUSION

The Board of Equalization may not enter into a contract to administer a transactions and use tax enacted by a county which has not been approved by a majority of the electorate.

ANALYSIS

The legal issues presented for resolution herein affect four separate but related statutory schemes: the "Sales and Use Tax Law" (Rev. & Tax. Code, §§ 6000-7176),[1] the "Bradley-Burns Uniform Local Sales and Use Tax Law" (§§ 7200-7212), the "Transactions and Use Tax Law" (§§ 7251-7274), and "Additional Local Taxes" (§§ 7280-7288.6).

Under the "Sales and Use Tax Law," the state imposes a sales tax at a specified rate upon retailers for the privilege of selling tangible personal property in this state. (§§ 6051-6051.5.) The state also imposes a complementary use tax on the storage, use, or other consumption of tangible personal property purchased from any retailer. (§§ 6201-6201.5.) Payment of the sales tax generally constitutes an exemption from liability for the use tax. (§ 6401.) The State Board of Equalization ("Board") administers these state taxes. (§ 7051.)

_____

[1]All section references are to the Revenue and Taxation Code unless otherwise indicated.

Under the "Bradley-Burns Uniform Local Sales and Use Tax Law," counties, cities, and redevelopment agencies may by ordinance impose an additional sales and use tax. (§§ 7200-7212.) Local agencies are required to contract with the Board for the performance of all functions incident to the administration of these local taxes. (§§ 7202, 7202.6.)

Under the "Transactions and Use Tax Law," certain local districts may impose a transactions and use tax for specified purposes. (See, e.g., §§ 7252.15, 7252.30, 7262.5.) A transactions tax, like a sales tax, is imposed for the privilege of selling personal property at retail. The complementary use tax under this statutory scheme, like the state use tax, is imposed upon the storage, use, or other consumption of personal property purchased from any retailer. These local taxes must also be administered by the Board. (§ 7270.)

Finally, under "Additional Local Taxes," a variety of local tax levies are authorized by the Legislature, including the authority of a county to enact a transactions and use tax in conformity with the "Transactions and Use Tax Law." (§§ 7285-7285.5.)

With this statutory background in mind, we address the question of whether the Board may enter into a contract with a county to administer a transactions and use tax if a majority of the voters of the county have not approved the tax. We conclude that the Board may not enter into such a contract.

Section 7285 provides:

"The board of supervisors of any county may levy a transactions and use tax at a rate of 0.25 or 0.5 percent, if the ordinance or resolution proposing that tax is approved by a two-thirds vote of all members of the board of supervisors and the tax is approved by a majority vote of the qualified voters of the county voting in an election on the issue. The transactions and use tax shall conform to [sections 7251-7274]."

Section 7285 requires that a county's transactions and use tax ordinance be "approved by a majority vote of the qualified voters of the county voting in an election on the issue." The statute also requires that the tax conform to the Transactions and Use Tax Law, sections 7251-7254. One requirement of the latter statutory scheme is that there shall be a "contract with the board to perform all functions incident to the administration and operation of the ordinance" imposing the transactions and use tax. (§ 7270.)

Accordingly, the question presented may be restated in the following terms: may the Board contract under section 7270 to administer a tax that was adopted in violation of section 7285? The answer is "no."

A preliminary matter to be addressed is why a county might not submit its transactions and use tax ordinance to the electorate for approval under the terms of section 7285 or why it might consider the tax valid even though submitted to the electorate but not approved by the requisite majority. The answer is that the electorate's vote might be unconstitutional. Such a vote may constitute a referendum contrary to the provisions of Article 2, sections 9 and 11 of the California Constitution,[2] or it may be a valid condition precedent imposed by the Legislature for the

---

[2] Article 2, section 9, subdivision (a) provides: "The referendum is the power of the electors to approve or reject statutes . . . except . . . statutes . . . providing for tax levies or appropriations for usual current expenses of the State." Article 2, section 11 reserves similar powers to the local

enactment of the tax. (Compare, *e.g., City of Woodlake v. Logan* (1991) 230 Cal.App.3d 1058 with *Rider v. County of San Diego* (1991) 1 Cal.4th 1, 16-25 (conc. opn. of George, J.).)[3]

However, we need not determine herein the validity of section 7285's voter requirement, nor whether such requirement is severable from the rest of the statute if it is found invalid. This is because of the provisions of article III, section 3.5 of the California Constitution, which provides:

"An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:

"(a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional;

"(b) To declare a statute unconstitutional;

"(c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulation."

No appellate court has to date held section 7285 to be unconstitutional.

In an analogous situation to that presented herein, we concluded that the Board was required to administer a transactions and use tax adopted by the Los Angeles County Transportation Commission despite our conclusion that the underlying statute was unconstitutional.[4] In 64 Ops.Cal.Atty. Gen. 156, 161-163 (1981), we analyzed the issue as follows:

"We next consider whether the State Board of Equalization (hereafter "Board") must administer the tax approved by a majority of the voters under section 13050 even though it failed to be adopted under the 2/3 vote requirements of article XIII A. We believe that the Board is bound by section 3.5 of article III of the Constitution to administer the tax ordinance regardless of our conclusion that the measure was not constitutionally approved by the voters.



"Clearly, the Board is an `administrative agency' for purposes of this article. (See Cal. Const. art. XIII, § 17; Gov. Code §§ 15606, 15623; 62 Ops. Cal. Atty. Gen. 809, 811-812 (1979); 62 Ops. Cal. Atty. Gen. 788, 790-791 (1979).)

---

electorate under procedures established by the Legislature.

[3]In 73 Op. Cal. Atty. Gen. 111 (1990), we concluded that the voter approval requirement of section 7285 constituted an unconstitutional referendum and that the requirement was not severable from the remainder of the statute. Justice George's language in *Rider* now casts doubt upon our 1990 conclusion.

[4]In *Los Angeles County Transportation Com.* v. *Richmond* (1982) 31 Cal.3d 197, the Supreme Court reached the contrary conclusion regarding the statute.

"It thus may nor `refuse to enforce' section 130350's mere majority requirement `on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional.' (See *Goldin* v. *Public Utilities Commission* (1979) 23 Cal.3d 638, 669, fn. 18; 62 Ops.Cal.Atty.Gen. 809, 811 (1979).) Of course, the Board would also be required to obey a superior court order as it directly relates to the issue, should the lower court declare the statute unconstitutional. (See *Fenske* v. *Board of Administration* (1980) 103 Cal.App.3d 590, 595-596.)"

By a parity of reasoning, the Board is not authorized in our situation to contract to administer a county transactions and use tax adopted without the requisite majority vote of the electorate. The Board must enforce the statutory scheme as written. The Board's determination that a vote of the people is unnecessary because section 7285 is unconstitutional would constitute a violation of Article III, section 3.5 of the Constitution.[5]

In answer to the question presented, therefore, we conclude that the Board may not enter into a contract to administer a transactions and use tax enacted by a county which has not been approved by a majority of the electorate.

\* \* \* \* \*

---

[5]Because of the conclusion reached, we need not address two additional questions submitted by the Board concerning the applicability of section 7203.5 ("The State Board of Equalization shall not administer and shall terminate its contract to administer any sales or use tax ordinance of a . . . county . . . if such . . . county . . . imposes a sales or use tax in addition to the sales and use taxes imposed under an ordinance conforming to the provisions of Sections 7202 and 7203").