TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-320 |
| of | : | |
| | : | August 9, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE MICKEY CONROY, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. May an Assembly member use campaign funds raised for his state legislative office to campaign for election to the office of county supervisor?

2. May an Assembly member receive campaign funds from other candidates for use in campaigning for election to the office of county supervisor?

3. May an Assembly member who is precluded from serving additional terms in the Assembly donate his campaign funds to a public interest or educational nonprofit organization that the member establishes or controls?

CONCLUSIONS

1. An Assembly member may use campaign funds, but not surplus campaign funds under current administrative enforcement practice, raised for his state legislative office to campaign for election to the office of county supervisor.

2. An Assembly member may receive campaign funds from other candidates for use in campaigning for election to the office of county supervisor unless prohibited from doing so by county ordinance.

1.                                                                                      95-320

3.   An Assembly member who is precluded from serving additional terms in the Assembly may donate his campaign funds to a public interest or educational nonprofit organization that the member establishes or controls if no substantial part of the proceeds will have a material effect on the member, his family, or his campaign treasurer, among other qualifications.

ANALYSIS

Contributions to and expenditures of political campaign funds are governed by the Political Reform Act of 1974 (Gov. Code, §§ 81000-91015; "Act"),[1] primarily in sections 85300-85307 (contribution limitations) and sections 89510-89522 (campaign funds).[2]   We are asked herein to analyze these provisions with respect to a member of the Assembly who, because of "term limits," may not run for reelection and accordingly will leave office in January of 1996.   If the member chooses to run for the office of county supervisor, may he use his Assembly campaign funds for his county supervisorial campaign and may he receive campaign contributions from other candidates?   If he decides not to run, may he donate his previously accumulated campaign funds to a public interest or educational nonprofit organization that he establishes or controls?

Preliminarily, we note that "[a] county may by ordinance or resolution limit campaign contributions in county elections."   (Elec. Code, § 10003.)   Here, the supervisorial office under consideration by the Assembly member is in Orange County.   However, the interpretation of any applicable Orange County ordinance is one for local determination and is not a matter for this office. (*Cf.* 76 Ops.Cal.Atty.Gen. 157, 167 (1993); 66 Ops.Cal.Atty.Gen. Foreword I, IV (1983) ["the Attorney General declines opinion requests calling for the interpretation of local charters, ordinances, resolutions, regulations or rules"].)   The scope of this opinion is thus limited to the requirements of the Act.

1.   Using Campaign Funds To Run For A Different Office

In order to run for the office of county supervisor, the Assembly member in question will be required to file a statement of intention, establish a separate campaign bank account, and establish a separate campaign committee.   (§§ 85200, 85201; Cal. Code Regs., tit. 2, § 18521.) The Act prohibits transfers from one campaign committee to another and the use of funds for one office that were raised for another.   Section 85304 states:

"No candidate for elective office or committee controlled by that candidate or candidates for elective office shall transfer any contribution to any other

---

[1]All section references are to the Government Code unless otherwise indicated.

[2]Elections Code section 18680, the so-called "Personal Use Law," regulates the use of funds raised to promote or defeat ballot measures.

candidate for elective office. Transfers of funds between candidates or their controlled committees are prohibited."[3]

Subdivision (b) of section 89510 provides:

"All contributions deposited into the campaign account shall be deemed to be held in trust for expenses associated with the election of the candidate to the specific office for which the candidate has stated, pursuant to Section 85200, that he or she intends to seek or expenses associated with holding that office."

In *Service Emp. Intern.* v. *Fair Political Prac. Com'n* (9th Cir. 1992) 955 F.2d 1312, the court ruled that the Act's prohibition against transfers from one campaign to another ("intra-candidate" transfers) was unconstitutional.[4] The court stated:

"We agree with the district court that the ban on intra-candidate transfers operates as an expenditure limitation because it limits the purposes for which money raised by a candidate may be spent. Expenditure limitations are subject to strict scrutiny and will be upheld only if they are `narrowly tailored to serve a compelling state interest.' [Citation.]

"Appellant FPPC asserts that the ban is justified by the government's interest in preventing funds from being raised for one office and spent for another. Even if we were to recognize this to be a compelling state interest, we would invalidate the ban as violative of the First Amendment because it is not narrowly-tailored. We agree with the district court that this interest in ensuring that contributors are not misled could be served simply by requiring candidates to inform contributors that their contributions might be spent on other races. [Citation.] Concerns about the unintended use of contributors' money can be met `by means far more narrowly

---

[3]A "candidate" is defined in the Act to include officeholders:

"`Candidate' means an individual who is listed on the ballot or who has qualified to have write-in votes on his or her behalf counted by election officials, for nomination for or election to any elective office, or who receives a contribution or makes an expenditure or gives his or her consent for any other person to receive a contribution or make an expenditure with a view to bringing about his or her nomination or election to any elective office, whether or not the specific elective office for which he or she will seek nomination or election is known at the time the contribution is received or the expenditure is made and whether or not he or she has announced his or her candidacy or filed a declaration of candidacy at such time. `Candidate' also includes any officeholder who is the subject of a recall election. An individual who becomes a candidate shall retain his or her status as a candidate until such time as that status is terminated pursuant to Section 84214. . . ." (§ 82007.)

[4]In *Buckley* v. *Valeo* (1976) 424 U.S. 1, 39, the court observed that "a primary effect of . . . expenditure limitations is to restrict the quantity of campaign speech by individuals, groups, and candidates. The restrictions, while neutral as to the ideas expressed, limit political expression `at the core of our electoral process and of the First Amendment freedoms.' [Citations.]"

tailored and less burdensome than [a] restriction on direct expenditures: simply requiring that contributors be informed that their money may be used for such a purpose.' [Citation.] We hold, therefore, that the intra-candidate transfer ban fails the narrowly-tailored prong of the strict scrutiny test." (*Id*., at 1322; fns. omitted.)

The district court had stated:

"On May 19, 1989, this court issued a preliminary injunction, finding the ban on transfers among a candidate's own committees burdens First Amendment rights and serves no compelling state interest sufficient to justify those burdens. The court believes that the injunction should be made permanent. It is clear that the ban acts as an expenditure limitation; such limitations have never been upheld, save in connection with the expenditures of corporations. Moreover, the sole justification offered for the inter-committee transfer ban, is a notion that contributions given for one office ought not be diverted to another, because the donation was solicited and given with a particular office in mind. This `trust' theory, which suggests donations are premised upon the office rather than the candidate, may, of course, sometimes be true; on the other hand, as evidence in this trial demonstrated, it is sometimes false. More to the point, it is clear that to the extent the provision is intended to insure truth in soliciting, a narrower and more efficacious means is readily at hand. Such a purpose is easily served by requiring that the candidate inform potential donors of his intentions, or if he is unable to do so, to acknowledge that the sums raised could be expended on other races. For these reasons, and essentially for the reasons argued by plaintiffs in their points and authorities in support of preliminary injunctive relief, the court enjoins the enforcement of those provisions of Proposition 73 prohibiting transfers between the various committees of the same candidate." (*Service Employees* v. *Fair Political Practices* (E.D.Cal. 1990) 747 F.Supp. 580, 591; fn. omitted.)

Although the Ninth Circuit and district court addressed only the use of campaign funds and not "surplus campaign funds,"[5] the rationale of these decisions would apply equally to the latter. Section 89519 provides:

"Upon leaving any elected office, or at the end of the postelection reporting period following the defeat of a candidate for elective office, whichever occurs last, campaign funds raised after January 1, 1989, under the control of the former candidate or elected officer shall be considered surplus campaign funds and shall be disclosed pursuant to Chapter 4 (commencing with Section 84100) and shall be used only for the following purposes:

---

[5]Campaign funds become "surplus campaign funds" when the officeholder leaves office or following the postelection reporting period after an election defeat. (§ 89519.)

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(d) Contributions to a political party or committee so long as the funds are not used to make contributions in support of or opposition to a candidate for elective office.

"(e) Contributions to support or oppose any candidate for federal office, any candidate for elective office in a state other than California, or any ballot measure.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ."

In effect section 89519 bans the use of surplus campaign funds when an officeholder seeks to run for a different office. Such prohibition affects an officeholder's quantity of political expression during his second campaign. The purpose of the statute, to prevent campaign contributors from being misled, may be more narrowly addressed by, for example, a disclosure requirement.

However, the Fair Political Practices Commission ("Commission") is the administrative agency responsible for enforcing section 89519 and rendering binding opinions thereon as well as the other provisions of the Act. (§§ 83100-83123.) Since no court has ruled upon the constitutionality of section 89519, the Commission currently enforces the statute's ban upon intra-candidate transfers of surplus campaign funds. Section 3.5 of article III of the Constitution provides:

"An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:

"(a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is constitutional;

"(b) To declare a statute unconstitutional;

"(c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

Accordingly, the ban on intra-candidate transfers of surplus campaign funds is subject to enforcement by the Commission until a court[6] rules otherwise. (See 76 Ops.Cal.Atty.Gen. 98, 101-102 (1993).)

_____

[6]Although the Constitution speaks in terms of an "appellate court," the Commission would of course be required to obey a lower court order directly relating to the issue, should the lower court declare section 89519 to be unconstitutional. (See *Fenske* v. *Board of Administration* (1980) 103 Cal.App.3d 590, 595-596.)

We thus conclude in answer to the first question that an Assembly member may use campaign funds, but not surplus campaign funds under current administrative enforcement practice, raised for his state legislative office to campaign for election to the office of county supervisor.

2.   Contributing Campaign Funds to Other Candidates

The second question is similar to the first except that the campaign funds are received from other candidates for office rather than from the initial contributors directly.  The answer is similar as well--the Act prohibits such practice, and the Ninth Circuit has ruled the statutory prohibition to be unconstitutional.

As previously quoted, section 85304 prevents any transfer of funds between candidates.  In *Service Emp. Intern.* v. *Fair Political Prac. Com'n, supra,* 955 F.2d at 1322-1323, the court found this ban on "inter-candidate" transfers unconstitutional:

"We turn now to the inter-candidate transfer ban, which, in contrast to the intra-candidate ban, operates as a contribution limitation because it limits the amount one candidate may contribute to another.  The Supreme Court has applied a somewhat less stringent test than strict scrutiny to decide the constitutionality of contribution limitations.  [Citations.] . . .  However, the test is still a `rigorous' one. [Citation.]  Proposition 73's ban on inter-candidate transfers may be sustained, therefore, only if the state `demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms.'  [Citation.]

"The FPPC asserts that the inter-candidate transfer ban is necessary to prevent contributors from circumventing the contribution limits by funneling contributions through one candidate to another.  As the district court pointed out, [citation], the inter-candidate transfer ban cannot serve this purpose in the absence of valid contribution limits.

"The Authors [of the Act] argue that the inter-candidate transfer ban may be justified by the state's interest in preventing corruption or the appearance of corruption by `political pawn brokers.'  [Citation.]  Even if we assume this to be an important state interest, the ban is not `closely drawn to avoid unnecessary abridgment of associational freedoms.'  [Citation.]  The potential for corruption stems not from campaign contributions per se but from large campaign contributions.  [Citation.]  The inter-candidate transfer ban prohibits small contributions from one candidate to another as well as large contributions.  We hold, therefore, that the inter-candidate transfer ban is unconstitutional because it fails the `rigorous' test used in *Buckley*, 424 U.S. at 29, 96 S.Ct at 640."

The Ninth Circuit also struck down the Act's limitation upon campaign contributions of $1,000 per year per candidate (§ 85301) on the basis that it favored incumbents over challengers. (*Id.*, at pp. 1318-1321.) Without a valid contribution limitation, such as the federal campaign limitation approved in *Buckley* v. *Valeo, supra,* 424 U.S. at 23-28, no governmental purpose would adequately support a general ban upon all transfers of contributions from one candidate to another as contained in section 85304.

Of course, if the county in question has a valid campaign contribution limitation with respect to supervisorial offices, the prohibition of section 85304 would "prevent contributors from circumventing the contribution limits by funneling contributions through one candidate to another." (*Service Emp. Intern.* v. *Fair Political Prac. Com'n, supra,* 955 F.2d at 1322.) Under such circumstances, we believe that 85304's prohibition would meet the court's test for appropriately addressing "`a sufficiently important interest.'" (*Ibid.*)

We thus conclude in answer to the second question that an Assembly member may receive campaign funds from other candidates for use in campaigning for election to the office of county supervisor unless prohibited from doing so by county ordinance.

3.   Donating Campaign Funds

If the Assembly member chooses not to seek election to any other public office, the Act allows him under certain conditions to donate his campaign funds to a public interest or educational nonprofit organization that he establishes or controls. Section 89515 provides:

> "Campaign funds may be used to make donations or loans to bona fide charitable, educational, civic, religious, or similar tax-exempt, nonprofit organizations, where no substantial part of the proceeds will have a material financial effect on the candidate, elected officer, campaign treasurer, or any individual or individuals with authority to approve the expenditure of campaign funds held by a committee, or member of his or her immediate family, and where the donation or loan bears a reasonable relation to a political, legislative, or governmental purpose."

With respect to surplus campaign funds, subdivision (c) of section 89519 allows them to be used to make:

> "Donations to any bona fide charitable, educational, civic, religious, or similar tax-exempt, nonprofit organization, where no substantial part of the proceeds will have a material financial effect on the former candidate or elected officer, any member of his or her immediate family, or his or her campaign treasurer."

It is to be noted that both sections 89515 and 89519 contain the limitation that there be no "material financial effect" on enumerated individuals. "Material financial effect" has not

been defined by the Legislature for purposes of these two statutes. However, the Commission has applied in these situations the tests set forth in section 87103 governing the conflict of interests provisions of the Act. (See Cal. Code Regs., tit. 2, §§ 18700-18706.) Generally a transaction has a material financial effect on an official if it increases his or her income or assets by $250 or more. (Cal. Code Regs., tit. 2, § 18702.1, subd. (a)(1).)[7] This would mean, for example, that the Assembly member could not be paid a salary or reimbursed for expenses by the nonprofit organization for more than $250 from the proceeds of the donation.

We thus conclude in answer to the third question that an Assembly member who is precluded from serving additional terms in the Assembly may donate his campaign funds to a public interest or educational nonprofit organization that the member establishes or controls if no substantial part of the proceeds will have a material effect upon the member, his family, or campaign treasurer, among other qualifications.

\* \* \* \* \*

---

[7]Moreover, any nonprofit organization controlled by the Assembly member while he is a "candidate" (§ 82007) could be found to be a "controlled committee" (§ 82016) subject to additional regulations (Cal. Code Regs., tit. 2, § 18217).